MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:    2015 ME 28
Docket:      Ken-13-577; Ken-13-581
Argued:      February 10, 2015
Decided:     March 17, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

COLLIN R. GIROUX

MEAD, J.

[¶1]  Collin R. Giroux appeals from a judgment of conviction entered by the trial court (*Marden, J.*) following his guilty pleas to burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2014); burglary (Class C), 17-A M.R.S. § 401(1)(A); three counts of theft by unauthorized taking (Class C), 17-A M.R.S. § 353(1)(B)(4) (2014); criminal mischief (Class D), 17-A M.R.S. § 806(1)(A) (2014); and violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2014).  The court also revoked Giroux's probation imposed in an earlier case based on his admission to violating probation.

[¶2]  Giroux contends that the court abused its discretion in denying his motion made prior to sentencing to withdraw his pleas and his admission.  *See* M.R. Crim. P. 32(d).  The motion was made on the ground that the discussion of Giroux's diagnosis of kleptomania in a presentence mental evaluation report

2

constituted new evidence of a mental abnormality that would be admissible, pursuant to 17-A M.R.S. § 38 (2014), to raise a reasonable doubt as to his intent to commit the crimes charged. The State contends that a diagnosis of kleptomania cannot raise a reasonable doubt on the issue of intent. We affirm the judgment.

## I. BACKGROUND

[¶3] In 2012, Giroux was on probation as part of a sentence imposed in 2008 for burglary and theft convictions. That year, the State charged him with the seven crimes listed *supra* and moved to revoke his probation. At Giroux's request, the State Forensic Service conducted two mental examinations, the first to determine his competence to stand trial, and the second to address issues of criminal responsibility and abnormal condition of the mind. *See* 15 M.R.S. § 101-D(1)-(2) (2014). The examiner concluded that Giroux was competent, able to appreciate the wrongfulness of his conduct, and able "to engage in goal-directed, planful behavior at the times of the current allegations." In his report, the examiner noted that

> Mr. Giroux has been stealing things since he was a young teenager, and possibly even before that. . . . [I]t appears that these thefts have reflected a recurrent failure to resist impulses to steal objects that have been of no real use to him. . . . Mr. Giroux's pattern of stealing is consistent with a DSM-IV diagnosis of Kleptomania.

[¶4] At a hearing held pursuant to M.R. Crim. P. 11, Giroux waived indictment, pleaded guilty to all of the new charges, and admitted to violating

probation. The plea agreement that he accepted included a thirty-month cap on time to serve. Giroux's counsel asked that the case be continued for sentencing, and requested a third evaluation so that he could further explore the impact of Giroux's kleptomania on the court's eventual sentence, saying:

> [I]n the criminal responsibility [evaluation] there it was identified that kleptomania is a real diagnostic phenomenon, it is abnormal, but it does not rise to the level that it would negate the specific intent of the offenses here. We have reviewed that and the defendant has made that determination. . . . [W]e do want the opportunity to present that phenomenon to the Court at . . . sentencing . . . to determine if it would mitigate [the sentence imposed].

The court granted both requests.

[¶5] The presentence examination report was filed on January 23, 2013. It, too, discussed Giroux's diagnosis of kleptomania. On August 13, 2013, eight months after he pleaded guilty, Giroux moved to withdraw his pleas and his admission on the ground that the discussion of kleptomania in the third report constituted new evidence of a mental abnormality that would be admissible to raise a reasonable doubt as to his intent to commit the crimes charged.[1] Following a hearing, the court denied Giroux's motion, finding that "appropriate analysis of Maine statutes and decisions will not support the use of kleptomania as a defense to the crime of theft."

---

[1] Title 17-A M.R.S. § 38 (2014) provides: "Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind."

4

[¶6]  At sentencing, the court entered judgment and sentenced Giroux to an aggregate of five years' imprisonment, with all but two years suspended, and two years of probation.  In addition, the court partially revoked Giroux's earlier probation and imposed two years of the underlying sentence, to be served concurrently with the new sentence.  Giroux appealed from the conviction and the revocation of his probation.  We granted Giroux a certificate of probable cause to proceed with the appeal from the revocation of probation and consolidated the two appeals.

## II.  DISCUSSION

[¶7]  Whether to grant a request to withdraw a plea is within the sound discretion of the trial court:

> In general, a defendant does not have an absolute right to withdraw a guilty plea, and we review a court's decision to deny a motion to withdraw a plea for an abuse of discretion.  We do so primarily by addressing four factors: (1) the length of time between entering the plea and seeking to withdraw it; (2) the potential prejudice to the State; (3) the defendant's assertions of innocence; and (4) any deficiency in the proceeding at which the defendant entered the plea in accordance with M.R. Crim. P. 11.

*State v. Newbert*, 2007 ME 110, ¶ 16, 928 A.2d 769 (alterations, citation, and quotation marks omitted).

[¶8]  Considering the first factor, eight months elapsed between the Rule 11 hearing and Giroux's motion to withdraw his pleas, weighing against Giroux's

position.[2]  Concerning the second, the State did not point to any prejudice that it would suffer by the delay, weighing in Giroux's favor.  Addressing the fourth factor, Giroux did not, and does not, allege that there was any defect in the Rule 11 proceeding.  On balance, Giroux falls well short of demonstrating an abuse of discretion in the court's decision unless the third factor—his assertion of innocence—weighs decisively in his favor.

[¶9]  In analyzing that factor, Giroux admits that he committed the acts charged.  He asserts that he is innocent of criminal conduct, however, because his kleptomania prevented him from acting with the requisite intent.[3]  *See* 17-A M.R.S. § 38 ("Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind."); *State v. Estes*, 418 A.2d 1108, 1117 (Me. 1980) ("Evidence of abnormal condition of [the] mind . . . if it creates a reasonable doubt as to the existence of the requisite culpable state of mind will result in an acquittal. . . . [It] raises the question

---

[2]  In *State v. Newbert*, we noted that a three-month delay weighed against the defendant. 2007 ME 110, ¶ 16, 928 A.2d 769.

[3]  The crime of burglary is not committed unless a defendant "enters or surreptitiously remains in a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein," 17-A M.R.S. § 401(1)(A) (2014), and conviction of theft by unauthorized taking requires that a defendant "obtain[] or exercise[] unauthorized control over the property of another with intent to deprive the other person of the property," 17-A M.R.S. § 353(1)(A) (2014).

6

whether the State has proven beyond a reasonable doubt that the defendant committed a crime at all.").[4]

[¶10] Giroux's argument fails because positive legislative action and our precedent make clear that a person may have the required intent to commit a crime even if he suffers from a compulsion to perform the prohibited act. Additionally, Giroux knew of his diagnosis before he entered his pleas, weakening his assertion that the third mental evaluation report constituted new information that would have changed his decision to plead guilty.

A.     Precedent

[¶11] In 1979, we said that

[i]nability to control one's actions does not negate the existence of a culpable mental state; rather, it serves as an excuse. . . . A person may act knowing that it is practically certain that his conduct will cause a forbidden result while lacking the capacity to refrain from causing the result or without appreciating its wrongfulness.

*State v. Ellingwood*, 409 A.2d 641, 646 (Me. 1979) (citation omitted).

---

[4] In *State v. Estes*, we explained that

[t]he Criminal Code does not undertake to define "abnormal condition of [the] mind" because the phrase is one of common usage and understanding. . . . [T]he question is not the precise nature of the abnormality but whether the abnormality, whatever its character, raises a reasonable doubt as to whether the defendant possessed the requisite culpable state of mind for the particular offense charged.

418 A.2d 1108, 1117 (Me. 1980) (citation omitted). For purposes of this appeal, we assume, without deciding, that kleptomania is an "abnormal condition of the mind."

[¶12]  Two years later, in considering whether evidence of drug withdrawal could constitute an abnormal condition of the mind that might raise an issue as to a defendant's intent, we held that

> an addict in [the defendant's] state suffers from a "compulsion" to obtain drugs.  Existence of a compulsion, or a compelling need, does not tend to negate a conscious purpose to cause certain results.  Nor does evidence of a compelling need tend to show that a defendant lacked conscious awareness of the attendant circumstances of his actions.  *In fact, evidence of a compelling need tends to confirm the conclusion that defendant acted with awareness and with the conscious object of fulfilling that need.*

*State v. Mishne*, 427 A.2d 450, 455 (Me. 1981) (emphasis added) (citation omitted).

[¶13]  In *State v. Abbott*, we again addressed the impact of a compulsion on a required mens rea in reviewing a murder case where a forensic psychiatrist testified that the defendant had suffered a psychotic episode that made him feel compelled to shoot his sons.  622 A.2d 723, 724 (Me. 1993).  We held that

> the expert psychiatric testimony presented by defendant was directed to the issue of criminal responsibility and did not generate an issue whether an abnormal mental condition bore on the culpable state of mind.  Testimony that defendant felt compelled to shoot his sons does not bear on the determination whether defendant had the requisite mental state.  Compulsion "does not tend to negate a conscious purpose to cause the result nor show that defendant lacked conscious awareness of the circumstances of his actions."

*Id.* at 725 (citing *Mishne*, 427 A.2d at 455).

8

[¶14]  In light of our jurisprudence, the court correctly found that evidence of kleptomania could not raise a reasonable doubt as to Giroux's intent to commit burglary and theft.

B.    Legislative Action

[¶15]  As we noted in *Abbott*, Giroux's argument that he was compelled to commit criminal acts would be properly considered in the context of an insanity plea pursuant to 17-A M.R.S. § 39 (2014), which he did not enter.[5]  622 A.2d at 725.  Even if he had, his argument would have carried weight only before 1986, when the statute provided that a defendant could establish that he was not criminally responsible by satisfying either of two tests: (1) a cognitive test, if the defendant "lacked substantial capacity to appreciate the wrongfulness of his conduct"; or (2) a volitional test, if the defendant "lacked substantial capacity to conform his conduct to the requirements of the law."  17-A M.R.S.A. § 39 (1983). Giroux's assertion that because of kleptomania he was unable to stop stealing goes directly to the volitional test.

[¶16]  The volitional test was repealed in 1986, however, reflecting a conscious decision by the Legislature to reject the defense that Giroux advances. P.L. 1985, ch. 796, § 5 (effective July 16, 1986).   The statement of fact

---

[5]  Title 17-A M.R.S. § 39(1) (2014) provides: "A defendant is not criminally responsible by reason of insanity if, at the time of the criminal conduct, as a result of mental disease or defect, the defendant lacked substantial capacity to appreciate the wrongfulness of the criminal conduct."

accompanying the repeal states the Legislature's intent explicitly: "The bill eliminates the volitional element of the insanity defense. . . . The elimination of this 'inability to control test' from the insanity defense will leave only the cognitive test." L.D. 2397, Statement of Fact (112th Legis. 1986). The Legislature's explicit rejection of what one senator referred to during floor debate as "the devil made me do it defense," 2 Legis. Rec. 1431 (1986), compels a conclusion that the trial court did not abuse its discretion in denying Giroux's motion to withdraw his pleas, which relied on precisely that defense.

C.     Giroux's Knowledge of the Kleptomania Diagnosis

[¶17]  Finally, Giroux knew that he suffered from a compulsion to steal and that he had been diagnosed with kleptomania well before he entered his pleas. The competency evaluation goes into great detail regarding his long-standing compulsion to steal. The criminal responsibility evaluation repeated and expanded on that discussion; made reference to a 2007 psychiatric discharge summary reporting that "[Giroux] was agreeable to a trial of [a medication] as this has some efficacy to treat Kleptomania"; and made a diagnosis: "Mr. Giroux's pattern of stealing is consistent with a DSM-IV diagnosis of Kleptomania." Furthermore, at the Rule 11 hearing Giroux's counsel referred to the kleptomania diagnosis and told the court that "it does not rise to the level that it would negate the specific intent of the offenses here."

[¶18]   The presentence report, resulting from the third mental evaluation conducted, does not add significant substance to those earlier discussions.  Rather, it summarizes them in an unsurprising conclusion: "Mr. Giroux's lifelong pattern of stealing, including his thefts at the times of the index offenses, appears to be the direct result of his Kleptomania and his personality disorder."  Because at the time he pleaded guilty Giroux was already well aware of his compulsion—for example, he reported handcuffing himself to avoid stealing and reported contemplating using a Taser on himself to combat the urge to steal—the kleptomania diagnosis did not require the trial court to grant Giroux a discretionary withdrawal of his pleas.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Ronald W. Bourget, Esq., Law Offices of Ronald W. Bourget, Augusta, for appellant Collin R. Giroux

Maeghan Maloney, District Attorney, and Fernand LaRochelle, Dep. Dist. Atty., Kennebec County District Attorney, Augusta, for appellee State of Maine

**At oral argument:**

Ronald W. Bourget, Esq., for appellant Collin R. Giroux

Paul F. Cavanaugh II, Asst. Dist. Atty., Kennebec County District Attorney, Augusta, for appellee State of Maine

Kennebec County Superior Court docket numbers CR-08-480, 12-534, 12-942

FOR CLERK REFERENCE ONLY