MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 79
Docket:      Cum-16-121
Argued:      December 14, 2016
Decided:     May 4, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

RICHARD GRIFFIN

SAUFLEY, C.J.

[¶1] Richard Griffin alleges that he experienced hallucinations through which voices belonging to the "Special Forces" commanded him to attract the attention of police officers so that he could kill them. Driving while intoxicated, Griffin crashed his truck, drawing a response from the Brunswick Police Department, and resulting in a charge of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2016). After a bench trial, the court (Cumberland County, *Wheeler, J.*) entered a judgment of conviction against Griffin for that OUI. He now appeals, arguing that the court erred in concluding that his trial defense of involuntary conduct—that his actions were involuntary because his behavior was caused by the "command hallucinations" he experienced—did not apply. We affirm the judgment.

## I. BACKGROUND

[¶2]   On January 10, 2015, in response to reports of a truck being operated recklessly, a Brunswick Police Department officer went to the intersection of Wood Pond Road and Conifer Lane where he discovered a truck off the road and on fire.  There were tire marks indicating erratic operation including sliding around and doing "doughnuts."  A fire truck also responded, and the fire was extinguished.

[¶3]  After the fire was out, a man unsteadily walked toward the officer and got "within one foot" of him.  The man—later identified as Griffin, the owner of the truck—smelled strongly of intoxicants.  He had bloodshot, glassy eyes, and admitted to having had a "couple of beers."  The officer conducted a series of field sobriety tests, several of which Griffin could not complete.  Based on the field sobriety test results and the surrounding circumstances, the officer decided to arrest Griffin and have him transported to the station for a blood-alcohol test.  Griffin's blood alcohol level was 0.20.  On January 12, 2015, Griffin was charged by complaint with OUI (Class D), 29-A M.R.S. § 2411(1-A)(A).

[¶4]   At the court's request, Griffin was subjected to a forensic psychological evaluation for "competency, criminal responsibility, abnormal

condition of the mind, and any other issues involving mental or emotional condition." The psychologist reported that Griffin maintained delusional beliefs, specifically that he had been sent by Special Forces on a "secret mission to kill police." These beliefs also manifested as command hallucinations, that is, Griffin heard voices from the Special Forces instructing him to "kill corrupt police." She concluded that Griffin's history and symptoms were "consistent with the diagnoses of Schizophrenia, paranoid type and Substance Abuse Disorder." Further, the psychologist concluded that Griffin's mental illness "was quite likely to impair his ability to correctly interpret his environment and accurately assess what was going on around him" and "likely impaired his ability to consciously formulate goals, plan or take reality based steps toward accomplishment of those goals."

[¶5] Griffin did not plead not criminally responsible by reason of insanity. *See* 17-A M.R.S §§ 39-40 (2016). The State filed a motion in limine to exclude any evidence of Griffin's mental state, arguing that his mental state was irrelevant because OUI is a strict liability crime. The court ruled "provisionally" that the psychologist could testify, but stated that it had yet to decide whether the testimony would be relevant to the issues in the trial.

4

[¶6] During the bench trial, Griffin presented the psychologist's testimony and report to support his defense that he was not guilty because his operation of the truck had been an involuntary act. The psychologist testified that Griffin told her he had "crashed a truck . . . but the Special Forces paid [him] to do it, so it can't be too bad." When the psychologist asked him why the Special Forces wanted him to do that, he said, "[T]hey've been having wicked problems with the cops, so it was a setup to see what they'd do and then I'd get them."

[¶7] The court concluded that "voluntariness is irrelevant to strict liability crimes," and therefore the involuntary conduct defense did not apply to the strict liability crime of OUI. The court found Griffin guilty of OUI and sentenced him to forty-eight hours' imprisonment, a $500 fine, and a 150-day suspension of his driver's license. Griffin timely appealed. *See* 15 M.R.S. § 2115 (2016); M.R. App. P. 2(b)(2)(A).

## II. DISCUSSION

A. Defenses and Pleas

[¶8] Although Griffin asserted only an involuntariness defense, much of his argument appears to be based on concepts related to a mens rea defense or an insanity plea. Accordingly, we begin by reviewing the defenses and

pleas that may be available to a defendant who is dealing with a significant mental health challenge. To provide clarity of analysis, we address (1) insanity pleas, (2) mens rea defenses, and (3) involuntary conduct defenses.

### 1.     Insanity

[¶9]  "A defendant is not criminally responsible by reason of insanity if, at the time of the criminal conduct, as a result of mental disease or defect, the defendant lacked substantial capacity to appreciate the wrongfulness of the criminal conduct."  17-A M.R.S. § 39(1).  For the purpose of applying the insanity defense, "'mental disease or defect' means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality."  *Id.* § 39(2).  The defense of insanity does not raise a reasonable doubt as to an element of the crime, but instead excuses a defendant from criminal responsibility even though the State can prove each element of the crime. *See State v. Graham*, 2015 ME 35, ¶ 21, 113 A.3d 1102.  The defendant must affirmatively plead the insanity defense, *see* 17-A M.R.S. § 39(3); M.R.U. Crim. P. 11(a)(1), and has the burden to prove the elements of the defense by a preponderance of the evidence, *see* 17-A M.R.S. § 101(2) (2016).

6

[¶10]  As we have recently held, the concepts underlying an insanity defense now involve only a cognitive test.[1]  *State v. Giroux*, 2015 ME 28, ¶¶ 15-16, 113 A.3d 229.  The volitional test[2] that might previously have applied in circumstances where a defendant was compelled by mental illness to commit criminal acts has been expressly repealed by the Legislature.  P.L. 1985, ch. 796, § 5; *see also Giroux*, 2015 ME 28, ¶¶ 15-16, 113 A.3d 229 (holding that pursuant to the insanity defense statute, a defendant's compulsion to steal, due to kleptomania, was no defense to burglary and theft charges).

[¶11]  When a defendant enters a plea of not criminally responsible by reason of insanity and elects to have a two-stage jury trial, the defendant's guilt is tried first.  17-A M.R.S. § 40(1)-(2).  Only if the State proves the elements of the crime beyond a reasonable doubt in the first phase does the jury consider the issue of insanity in a second phase.  17-A M.R.S. § 40(2).  If a defendant is found not criminally responsible by reason of insanity, the result

---

[1]  In holding that Arizona's similar insanity defense statute did not violate a defendant's due process rights, the United States Supreme Court distinguished tests of cognitive incapacity from those of moral incapacity.  *Clark v. Arizona*, 548 U.S. 735, 747 (2006).  Although the formulation of Maine's insanity defense statute is one of moral incapacity, cognitive incapacity is itself sufficient to establish a moral incapacity.  *See id.* at 751 n.14, 753; *see also* 17-A M.R.S. § 39 (2016).

[2]  Pursuant to the volitional test, a defendant was not criminally responsible if, as a result of mental disease or defect, the defendant "lacked substantial capacity to conform his conduct to the requirements of the law."  *State v. Giroux*, 2015 ME 28, ¶ 15, 113 A.3d 229 (quoting 17-A M.R.S.A. § 39 (1983)).

is that the defendant is committed to a mental health facility until the court determines that "the person may be released or discharged without likelihood that the person will cause injury to that person or to others due to mental disease or mental defect." 15 M.R.S. §§ 103, 104-A(1) (2016).[3]

2.     Lack of a Culpable State of Mind

[¶12]  Alternatively, evidence of a defendant's mental condition may negate the mens rea element of a crime.  The Criminal Code provides that both intoxication and mental abnormality may "raise a reasonable doubt as to the existence of a required culpable state of mind."  17-A M.R.S. §§ 37(1), 38 (2016).  If mens rea is an element of the crime and if the fact-finder determines that the evidence of the defendant's mental condition raises a reasonable doubt regarding that element, the defendant must be acquitted.

[¶13]  In contrast to the considerations relevant to an insanity defense, "[t]he Criminal Code does not undertake to define 'abnormal condition of mind' because the phrase is one of common usage and understanding."  *State v. Estes*, 418 A.2d 1108, 1117 (Me. 1980).  "[T]he question is not the precise

---

[3] Griffin did not raise an insanity defense at trial, possibly because the consequence of a finding of not guilty by reason of insanity—potentially indefinite commitment in a mental health facility— exceeds the likely consequences of a conviction for operating under the influence (Class D). *Compare* 15 M.R.S. §§ 103, 104-A (2016), *with* 29-A M.R.S. § 2411(5) (2016).  Nor is it clear that his argument, that he was compelled to operate a motor vehicle by his mental illness, could have provided a successful insanity defense. *See Giroux*, 2015 ME 28, ¶ 16, 113 A.3d 229.

nature of the abnormality but . . . whether the State has proven beyond a reasonable doubt that the defendant committed a crime at all."[4]  *Id.* Accordingly, distinct from the treatment of an insanity defense, the State's failure to prove a culpable state of mind results in an acquittal on that charge.

[¶14]  By definition, neither mental abnormality, intoxication, nor any other defense that raises a reasonable doubt as to the existence of a required culpable state of mind is applicable to strict liability offenses, because those offenses "[do] not include a culpable mental state element with respect to any of the elements of the crime."  17-A M.R.S. § 34(4-A) (2016); *see Graham*, 2015 ME 35, ¶ 21, 113 A.3d 1102 ("The mental abnormality defense is relevant to the question of the defendant's guilt *when a culpable state of mind is an element of the crime charged* because the defense tend[s] to negate the conclusion that [the] defendant had a culpable state of mind." (emphasis added) (quotation marks omitted)).  Because OUI is a strict liability crime, the

---

[4]  "[E]vidence that a defendant may have been suffering from mental or emotional difficulties does not *necessarily* suggest that defendant's conduct was not [culpable] . . . ."  *State v. Mishne*, 427 A.2d 450, 454 (Me. 1981) (emphasis added).  For instance, evidence of a defendant's "low cognition, post-traumatic stress disorder, and other significant mental health issues that adversely affect[ed] her level of functioning" did not require us to vacate the defendant's murder conviction when the evidence that she formed an intention to hurt the victim and then inflicted numerous injuries on him over an extended period of time nevertheless supported a finding that her conduct was knowing and intentional.  *State v. Jeskey*, 2016 ME 134, ¶¶ 20, 34, 146 A.3d 127 (quotation marks omitted).  "Thus, in evaluating whether evidence of the defendant's abnormal mental state raises doubt as to the [culpable] quality of the defendant's actions, the fact-finder should consider the relationship between the defendant's mental state and evidence that the defendant in fact acted [culpably]. . . ."  *State v. Graham*, 2015 ME 35, ¶ 23, 113 A.3d 1102.

State was not required to prove a mens rea, and therefore evidence of an abnormal condition of the mind would not have applied here to negate any element of the crime. *State v. Curtis*, 2003 ME 94, ¶ 3, 828 A.2d 795 ("Because OUI is not a crime requiring any specific intent, *any* intent defense is unavailing.").[5]

### 3. Involuntary Conduct

[¶15] Finally, a defendant will not bear criminal responsibility if the defendant's otherwise criminal conduct was not "voluntary." 17-A M.R.S. § 103-B(1) (2016) ("It is a defense that, when a person causes a result or engages in forbidden conduct, the person's act or omission to act is involuntary.").

[¶16] "Involuntary conduct is the result of an uncontrolled physical impetus, rather than a state of mind." *State v. Morrison*, 2016 ME 47, ¶ 9, 135 A.3d 343. "Voluntary conduct is the result of an exercise of [a] defendant's conscious choice to perform [it]," whatever the source of the motivation to do so, "whereas involuntary conduct includes reflex[es], convulsion[s], or other act[s] over which a person has no control." *Id.* ¶ 7 (quotation marks omitted).

---

[5] We recognize that the applicable language in the Maine Jury Instruction Manual needs clarification. *See* Alexander, *Maine Jury Instruction Manual* § 6-26 at 6-48 (2016 ed.).

"Conscious choice is best understood by what it is not: a reflexive or convulsive action." *Id.* ¶ 9.

[¶17]  Involuntariness is a complete defense to a charged crime.  A defendant claiming the involuntary conduct defense has the burden to assert the defense by identifying evidence that is sufficient to raise a reasonable doubt as to whether the criminal conduct was voluntary.  *See* 17-A M.R.S. §§ 101(1), 103-B (2016).  If the court finds that the defendant has raised the defense, then the State must disprove involuntariness beyond a reasonable doubt.  *See id.* § 101(1).  If the State is unable to disprove, beyond a reasonable doubt, that the conduct was involuntary, the result will be an acquittal.[6]  *See id.* §§ 101(1), 103-B.

B.    Griffin's Argument

[¶18]  Having reviewed the available defenses, we turn to Griffin's argument on appeal.  Griffin's sole defense at trial was that his operation of a motor vehicle was involuntary.  *See* 17-A M.R.S § 103-B(1).  He argues that, because he was acting at the direction of the voices he perceived to be coming from the Special Forces, his act of driving while in a delusional state of mind

---

[6]  Similarly, a defendant who successfully asserts that the criminal conduct was committed under duress or was justified to avoid a greater harm will be acquitted.  *See* 17-A M.R.S. §§ 101(1), 103 to 103-A (2016).

was not "voluntary." He contends that the evidence introduced at trial was sufficient to raise an involuntariness defense and that the court erred in determining that the defense of involuntary conduct is inapplicable to strict liability offenses. "The trial court's application of a statutory defense is an issue of law that we review de novo." *Graham*, 2015 ME 35, ¶ 15, 113 A.3d 1102.

1.      Involuntary Conduct as a Defense to Strict Liability Crimes

[¶19]  The involuntary conduct defense does not implicate a defendant's culpable mental state, and therefore whether a crime is a strict liability crime has no relevance to its applicability. The involuntary conduct defense applies to negate the actus reus of a crime when the *forbidden conduct* was an involuntary act, that is, the conduct was caused by a reflex, seizure, or some other act over which the defendant had no conscious control. *See* 17-A M.R.S. § 103-B (2016); *Morrison*, 2016 ME 47, ¶ 7, 135 A.3d 343.

[¶20]  The conduct prohibited by statute here is the operation of a motor vehicle while the operator is impaired by drugs or alcohol. Specifically, "[a] person commits OUI if that person . . . *[o]perates a motor vehicle*: (1) [w]hile under the influence of intoxicants; or (2) [w]hile having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters

of breath." 29-A M.R.S. § 2411(1-A)(A) (emphasis added). Thus, OUI is defined to include only the two elements of (1) the forbidden conduct of operating a motor vehicle, and (2) the attendant circumstance of being under the influence of intoxicants or having a blood alcohol level greater than 0.08. *See* 17-A M.R.S. § 32 (2016); 29-A M.R.S. § 2411(1-A)(A). The motor vehicle statutes expressly state that OUI is a "strict liability crime" that "does not include a culpable mental state element with respect to any of the elements of the crime and thus proof by the State of a culpable state of mind as to that crime is not required." 17-A M.R.S. § 34(4-A); 29-A M.R.S. § 2411(5) (2016). The parties stipulated that Griffin had a blood alcohol level of 0.20, and it was undisputed that he operated a motor vehicle.

[¶21] Griffin contends that he was compelled by hallucinations to operate the vehicle, not that he did so as the result of a reflex, seizure, or some other act over which he had no conscious control. The court's conclusion that Griffin's hallucinations were not relevant to the voluntariness of his actions was correct, as we discuss below. However, the court's conclusion that the involuntariness defense can *never* apply to strict liability crimes went a step too far.

[¶22] For certainty in application of section 103-B to such circumstances, we clarify that the involuntary conduct defense provided by section 103-B *is* applicable to strict liability crimes, including OUI, because when it applies, it negates the actus reus of the crime. *See State v. Brown*, 2017 ME 59, ¶ 8 n.4, --- A.3d ---. It is possible to conceive of facts by which the operation of a vehicle is caused by a spasm, seizure, or convulsion. Although it is a factually unlikely circumstance that a person in the driver's seat was *only* operating the vehicle as a result of a reflex, seizure, or some other act over which the person had no conscious control, it cannot be said that the defense can *never* apply to OUI.

2. Evidence that Griffin's Command Hallucinations Rendered His Conduct Involuntary

[¶23] At trial, Griffin had the burden to identify evidence that raised a reasonable doubt as to the voluntariness of his conduct. 17-A M.R.S. §§ 101(1), 103-B. Griffin does not dispute that he engaged in the prohibited conduct. He drove the vehicle, and he was intoxicated. The question before us, then, is whether the involuntariness defense, which, in the abstract, can be applied to an OUI charge, applied to the facts presented by Griffin.

[¶24] Griffin did not allege a convulsion or other uncontrolled *physical* impetus. Rather, he argued that the evidence that his conduct was directed by

command hallucinations was sufficient for the court to have found that the involuntary conduct defense applied in this case. We recently rejected a similar argument in another defendant's appeal from a conviction for a strict liability crime.

[¶25] In *Morrison*, the defendant was charged with the strict liability crime of gross sexual assault. 2016 ME 47, ¶ 4 & n.1, 135 A.3d 343. The defendant attempted to offer the testimony of a counselor that her history of having been abused made her own abusive conduct involuntary. *Id.* ¶ 4. The trial court ruled that the counselor's testimony was inadmissible because it was irrelevant to the involuntary conduct defense. *Id.* In affirming the conviction, we noted that her argument conflated the "conscious choice" required for an act to be voluntary with "the state of mind required to commit certain crimes" and thereby "misstate[d] the nature of the involuntary conduct defense." *Id.* ¶ 9.

[¶26] As the statute and the cases make clear, the involuntary conduct defense applies only when a defendant's body is not under the control of the defendant's mind. Whether the defendant's mind and hence his volition is under the defendant's control is of no moment to the issue of voluntariness.

*See id.* (citing *State v. Flick*, 425 A.2d 167, 171 (Me. 1981) (distinguishing "non-volitional action" from "concepts of judgment and choice.")).

[¶27]  In the matter before us, Griffin could point to no evidence that, viewed in the light most favorable to Griffin, *see State v. Hanaman*, 2012 ME 40, ¶ 3, 38 A.3d 1278, would show that his operation of the motor vehicle was physically involuntary.  Further, the trial court did not exclude any evidence that Griffin offered to support his argument that his conduct was involuntary. The psychologist opined that Griffin maintained delusional beliefs, had an impaired ability to correctly interpret his environment, and had an impaired ability to formulate goals and take reality-based steps toward accomplishing them.  Although this evidence implicates Griffin's mental state, suggesting that his judgment and choice are impaired, the evidence does not implicate his volition.  *See Flick*, 425 A.2d at 171.

[¶28]  Based on the psychologist's testimony regarding Griffin's delusional beliefs, his instructions were to "set up" the police so that he could kill corrupt officers.  Even if Griffin had been compelled by these hallucinations to operate a motor vehicle, that would not render his conduct involuntary, as that term is used in the involuntary conduct defense, because a compulsion is not a reflexive or convulsive type of movement—the action

itself was under Griffin's control even if the motivation to perform it was not. *See Morrison*, 2016 ME 47, ¶ 7, 135 A.3d 343. None of the evidence that Griffin introduced or referred to at trial had any bearing on whether the prohibited act of operating a motor vehicle was involuntary within the meaning of the involuntary conduct defense. Accordingly, the court did not err to the extent that it concluded the defense of involuntariness did not apply to the facts of the matter before it.

[¶29] Griffin's mental illness is addressed by the statutes through the opportunity for a plea of not guilty by reason of insanity. He chose not to enter that plea. The mens rea defense was not available as a matter of law, and the involuntariness defense was not presented as a matter of fact.

The entry is:

> Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Lebanon, for appellant Richard Griffin

Stephanie Anderson, District Attorney, and Amanda Doherty, Asst. Dist. Atty. (orally), Prosecutorial District Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2015-197
FOR CLERK REFERENCE ONLY