MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 129
Docket:      Yor-19-459
Argued:      September 15, 2020
Decided:     November 3, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

KANDEE A. WEYLAND

HORTON, J.

[¶1]  Kandee A. Weyland, also known as Kandee A. Collind, appeals from a judgment of conviction of murder, 17-A M.R.S. § 201(1)(A) (2020), entered by the trial court (York County, *Douglas, J.*) following her plea of guilty.  She argues that the court abused its discretion when it denied her motion to withdraw her guilty plea.  She also appeals her sentence of thirty-two years in prison, arguing that the court abused its discretion and misapplied sentencing principles in its decision.  *See State v. Weyland*, No. SRP-19-460 (Me. Sent. Rev. Panel Jan. 2, 2020) (granting leave to appeal the sentence).  We affirm the judgment and sentence.

## I. BACKGROUND AND PROCEDURAL HISTORY

[¶2]  We draw the following facts from the State's recitation of the evidence, which was undisputed except as noted below at the time of Weyland's guilty plea.  *See* M.R.U. Crim P. 11(b)(3), (e).  Weyland and the victim were married and had two children, a son and a daughter, together.  The couple separated in April 2016.  On February 21, 2017, Weyland received in the mail notice of a judicial decision granting the victim primary physical residence of the children.  She was upset by the decision and told her mother that she "wanted [the victim] dead."  At that time, family members convinced her not to confront the victim.

[¶3]  The following day, Weyland and the children were driving to visit family members when the son called the victim.  During the call, the victim told the son about the decision granting the victim custody of the children.  Weyland became aware of the conversation, and when she realized what the victim had told their son, she changed direction and drove to the victim's home.  She exited the vehicle upon arriving and confronted the victim in his driveway.  The victim began recording a video of her on his cell phone.  Weyland then stabbed the victim in the chest, causing his death.

[¶4] The victim dropped his cell phone, and Weyland began stabbing it. While the son attempted to provide emergency care to his father, he saw Weyland doing something by a nearby barn.[1] Maine State Police eventually recovered the victim's phone near the barn where the son had seen her.

[¶5] In February 2017, the State filed a criminal complaint charging Weyland with one count of knowing or intentional murder, 17-A M.R.S. § 201(1)(A), and one count of violation of a protective order (Class C), 19-A M.R.S. § 4011(4) (2020). In April 2017, a grand jury indicted her on the same charges.

[¶6] Weyland and the State eventually reached a plea agreement pursuant to which she would plead guilty to murder and the State would dismiss the count for violation of a protection order and recommend a term of imprisonment for the murder of between twenty-five and thirty-two years. *See* M.R.U. Crim. P. 11A(a)(1), (3), (d). On August 27, 2018, the court held a hearing, pursuant to Rule 11, at which Weyland entered an unconditional guilty plea to the charge of murder. During the Rule 11 hearing, the court asked Weyland whether she was taking any prescription medications. She replied that she was

---

[1] According to the State, Weyland was digging a hole and attempting to bury the phone in the hole. According to Weyland, "[s]he may have been kicking the phone there, but there was not digging going on as the State indicated."

4

taking Zyprexa, an antipsychotic medication, Vistaril, an anti-anxiety and antidepressant medication, and Tylenol.

A.    Motion to Withdraw

[¶7]  On October 26, 2018, before her sentencing, Weyland filed a motion to withdraw her plea.  *See* M.R.U. Crim. P. 32(d).  She asserted that she had not taken her prescribed medication on the day of the Rule 11 hearing and that she has limited cognitive capacity.  Accordingly, she claimed that she had not entered a knowing plea because she did not understand the mens rea element of the murder charge.

[¶8]  The court held an evidentiary hearing on her motion in June 2019. It admitted two exhibits: Weyland's medication records for August 2018 and a written summary of the phone calls she made while in jail.  The evidence at the motion hearing focused on Zyprexa, Vistaril, and Topamax, a seizure medication.  The State presented evidence that Weyland took her medications as prescribed during the days leading up to the Rule 11 hearing.

[¶9]  In its written decision issued after the motion hearing, the court made the following findings of fact, which are supported by evidence in the record. *See Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 8, 226 A.3d 227.  The court found that Weyland was "coherent, engaged, cooperative, and responsive" at

the Rule 11 hearing. Further, the court noted that Weyland's plea attorneys confirmed that they believed that she was entering a knowing and voluntary plea.

[¶10] The court found that Weyland had taken her medications as prescribed before the Rule 11 hearing and that she had not established that her medications, either alone or in combination, affected her ability to enter a knowing plea.[2] She "demonstrated sufficient awareness during the Rule 11 proceeding to challenge portions of the State's summary of facts [and] to question the court's explanation of the mens rea element [of murder]."

[¶11] In its findings, the court noted that Weyland entered her plea roughly sixteen months after indictment and that she filed a motion to withdraw the plea fifty-seven days after entering it. Despite this delay, the court found that she had misgivings about her plea "almost immediately" after the Rule 11 hearing.

---

[2] The court declined to credit the testimony of Weyland's expert witness, who testified that, based on Weyland's limited cognitive capacity and her allegations that she did not take her medication as prescribed, she was likely not aware of what was transpiring at the Rule 11 proceeding and was simply trying to give "socially acceptable" answers. The court had a reasonable basis for rejecting this testimony given that the witness did not attend the Rule 11 hearing and did not speak to Weyland about how she was feeling on the day of the hearing. *See Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 11, 226 A.3d 227 (stating that "we . . . give due regard to the trier of fact's determinations on credibility, weight and significance of evidence." (quotation marks omitted)).

6

[¶12]   Based on its findings, the court entered an order denying Weyland's motion to withdraw her guilty plea.

B.   Sentencing

[¶13]   The court held a sentencing hearing in October 2019.  At the hearing, the court made oral findings as to Weyland's commission of the offense.  It determined that the basic sentence was forty-five years in prison.  However, once the court weighed the aggravating and mitigating factors, it concluded that the maximum term of incarceration was thirty-two years.  The court entered a judgment of conviction and sentenced Weyland to thirty-two years in prison.

[¶14]   Weyland filed a timely appeal from the judgment of conviction, *see* 15 M.R.S. § 2115 (2020); M.R. App. P. 2B(b)(1), and an application to allow an appeal of her sentence, *see* 15 M.R.S. §§ 2151-2153 (2020); M.R. App. P. 20.  The Sentence Review Panel granted leave to appeal the sentence.  *State v. Weyland*, No. 19-SRP-460 (Me. Sent. Rev. Panel Jan. 2, 2020).

## II.  DISCUSSION

[¶15]   Weyland makes three primary arguments on appeal.  The first is that she has a valid claim of innocence because she suffered from an abnormal condition of the mind and that the court should have allowed her to pursue that

theory at trial. Second, she argues that the evidence in the motion record demonstrates that she wanted to withdraw her guilty plea almost immediately after the Rule 11 proceeding and that the State would not have experienced prejudice if her motion had been granted. Finally, she argues that the court misapplied sentencing principles. We conclude that her arguments are unpersuasive.

A.     Motion to Withdraw Plea

[¶16]  We review the trial court's denial of a motion to withdraw a plea for an abuse of discretion. *State v. Lambert*, 2001 ME 113, ¶ 5, 775 A.2d 1140.

[¶17]  Before a sentence is imposed, a criminal defendant may seek leave to withdraw a guilty plea. M.R.U. Crim. P. 32(d); *State v. Bradstreet*, 521 A.2d 679, 682 (Me. 1987). "Although relief should be granted liberally, a defendant does not have an absolute right to withdraw a plea." *State v. Hillman*, 2000 ME 71, ¶ 7, 749 A.2d 758. Instead, the trial court's decision must be "based upon the facts and circumstances of each particular case with the ultimate purpose of furthering justice." *State v. Malo*, 577 A.2d 332, 333 (Me. 1990) (quotation marks omitted).

[¶18]  "Trial courts evaluate four factors when deciding motions to withdraw pleas, and we similarly evaluate those factors when reviewing the

8

trial court's exercise of its discretion." *Hillman*, 2000 ME 71, ¶ 8, 749 A.2d 758. They are (1) the length of time between the defendant's entering the plea and seeking to withdraw it; (2) any prejudice to the State that would result if the plea were withdrawn; (3) the defendant's assertion of innocence; and (4) any deficiency in the Rule 11 proceeding. *Id.*; *see Malo*, 577 A.2d at 333 (citing cases relevant to each factor). No one factor is necessarily dispositive. *See State v. Giroux*, 2015 ME 28, ¶ 8, 113 A.3d 229. However, one factor's weight alone may tip the scale in the defendant's favor. *See id.*

[¶19] We begin with the length of time between Weyland's entering the plea and her decision to withdraw it. *See Hillman*, 2000 ME 71, ¶¶ 8-9, 749 A.2d 758; *Lambert*, 2001 ME 113, ¶ 6, 775 A.2d 1140. We have favored a case-by-case approach when evaluating whether a defendant's delay in seeking to withdraw the plea was so lengthy as to weigh against allowing withdrawal.[3] *State v. Comer*, 584 A.2d 638, 640 (Me. 1990)*.* The trial court made several factual determinations when coming to its ultimate finding on the length of time between the entry of the plea and Weyland's decision to request its withdrawal.

---

[3] We have held that nineteen days weighed in favor of granting a motion, *State v. Hillman*, 2000 ME 71, ¶ 9, 749 A.2d 758, and that three months weighed against granting a motion, *State v. Lambert*, 2001 ME 113, ¶¶ 6, 14, 775 A.2d 1140; *see State v. Giroux*, 2015 ME 28, ¶¶ 17-18, 113 A.3d 229 (explaining that a lengthy delay weighed against granting the defendant's motion where the defendant's reason for wanting to withdraw his plea was based on circumstances that were known to him at the time of his plea).

We review these determinations for clear error. *True v. State*, 457 A.2d 793, 795 (Me. 1983).

[¶20] In evaluating Weyland's motion, the trial court found that her "first definitive indication that [she] had made a firm decision to seek to withdraw her plea" occurred on October 21, 2018, fifty-two days after the Rule 11 proceeding. The court based its finding on evidence of an October 21 phone call with her son, during which she said, "I told my . . . lawyers that I wanted . . . a trial." However, there was also evidence that, in a recorded telephone conversation on September 18, 2018, twenty-two days after entering her plea, Weyland told her mother, "I called [my lawyers] and left a message saying that I want to have a trial."[4] The court did not mention this conversation in its ruling.

[¶21] Weyland's statements made on September 18 and October 21 were virtually identical. However, the court relied solely upon the latter. A twenty-two-day delay between the entry of the plea and the first conversation would weigh in favor of granting Weyland's motion. *See Hillman*, 2000 ME 71, ¶ 9, 749 A.2d 758. However, even assuming the truth of her

---

[4] There was also some evidence that Weyland told someone on September 2 that she wanted to "veto" her guilty plea and "still do trial." Two days later, however, she was ambivalent about the decision, stating that she "was thinking about changing [her] plea" but ultimately concluding that she has "gotta do whatever would be healthy in the long run for the kids." She told her son on September 23: "For the rest of my life, I'll wish that I went to trial."

September 18, 2018, statement, a change of heart within twenty-two days after the plea is not dispositive and does not end the analysis. *See id.* ¶¶ 9, 13 (concluding that the first factor weighed in favor of granting the motion to withdraw the plea, but affirming the court's denial of the motion because—on balance—the court's weighing of all four factors was within the bounds of its discretion).

[¶22]  The next factor is whether the State would experience prejudice if the defendant were allowed to withdraw the plea and proceed to trial. *See State v. Newbert*, 2007 ME 110, ¶ 17, 928 A.2d 769.  The prejudice must "seriously compromise[] the State's case by affecting the ability of the State to present its evidence" for this factor to weigh in the State's favor.  *Hillman*, 2000 ME 71, ¶ 10, 749 A.2d. 758; *see also Giroux*, 2015 ME 28, ¶ 8, 113 A.3d 229 (focusing only on the potential for prejudice brought on by delay); *cf. United States v. Morrison*, 967 F.2d 264, 269 (8th Cir. 1992) ("Whether we classify this as prejudice to the government, or prejudice to the complaining victim, it is real prejudice, *caused by the timing* of [the defendant's] guilty plea and subsequent attempts to withdraw." (emphasis added)).

[¶23]   Here, the court found no concrete evidence suggesting that withdrawing the plea would affect the State's ability to present evidence.

However, it concluded that this factor did not weigh in favor of withdrawal because of the potential for the trial to retraumatize the children who witnessed the crime. In expressing its concern for the children, the court cited dicta from our opinion in *Hillman*, 2000 ME 71, ¶ 10 n.5, 749 A.2d 758. In *Hillman*, we noted that trial courts may consider "the impact of a plea withdrawal on vulnerable victims, when determining whether there would be prejudice to the State resulting from withdrawal of a previously entered plea." *Id.* If this factor is to be considered, however, the retraumatization of victims must affect the State's ability to present its case. *Cf. Lambert*, 2001 ME 113, ¶ 7, 775 A.2d 1140 (focusing on prejudice to the State brought on by logistical concerns stemming from the witnesses having moved to different states). Because the court ultimately concluded that the prejudice factor supported neither party, the reference to retraumatization of the children did not influence the analysis.

[¶24] The next factor focuses on the defendant's assertion of innocence. *See Giroux*, 2015 ME 28, ¶ 7, 113 A.3d 229. "[T]he mere presence of . . . an assertion [of innocence] does not necessarily entitle a defendant to withdraw [her] plea of guilty . . . ." *Hillman*, 2000 ME 71, ¶ 12, 749 A.2d 758. Instead, trial courts must assess the "credibility" of an innocence claim in ruling on a motion

to withdraw a plea. *Id.* ¶ 11; *see Newbert*, 2007 ME 110, ¶ 17, 928 A.2d 769 (affirming the denial of a motion to withdraw a plea where the defendant's assertion of innocence came "without explanation"); *Malo*, 577 A.2d at 334 (affirming the denial of a motion to withdraw a plea where the defendant "fail[ed] to establish any fact that would undermine the validity of [his] plea").

[¶25]  Weyland asserts that she may be innocent of the crime of murder because she could have credibly claimed that she suffered from an abnormal condition of the mind.[5]  The relevant statute provides, "Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind."  17-A M.R.S. § 38 (2018).[6] "[W]hen evidence of an abnormal condition of the mind is presented, the court is called upon to determine whether . . . the State has proved beyond a reasonable doubt that the accused acted with the culpable state of mind

---

[5]  She also claims that she could have argued for a conviction on the lesser included offense of manslaughter.  However, she has pointed to little evidence in the record that could have supported a manslaughter instruction pursuant to 17-A M.R.S. §§ 201(3), 203(1)(B) (2020) (setting out the crime of "adequate provocation" manslaughter); 17-A M.R.S. § 201(4) (2020) (requiring that a defendant prove that it was "reasonable for [him or her] to react to the provocation with extreme anger or extreme fear").

[6]  Title 17-A M.R.S. § 38 (2018) was the version of the statute in effect at the time of Weyland's offense.  It has since been amended.  P.L. 2019, ch. 462, § 1 (effective Sept. 19, 2019.)

necessary to commit the crime charged." *State v. Proia*, 2017 ME 169, ¶ 13, 168 A.3d 798.

[¶26] When a defendant claims that he or she suffers from an abnormal condition of the mind, the defendant must proffer some evidence of the condition and of his or her inability to act with the requisite state of mind. *See Malo*, 577 A.2d at 334 ("Though [the defendant] alludes to the existence of evidence sufficient to raise a reasonable doubt of [his] culpability, he presented no such evidence at the hearing on the motion to withdraw . . . ."). Weyland failed to do so. At the hearing on her motion to withdraw, her expert witness testified that she suffers from traumatic brain injury, post-traumatic stress disorder, depressive disorder, and anxiety disorder. The witness did not testify that those diagnoses might have prevented Weyland from acting with a culpable state of mind at the time she killed the victim. Rather, the testimony centered around the likelihood that these diagnoses impaired her understanding of the Rule 11 hearing, including her understanding of the mens rea element of murder. Thus, she did not present evidence linking her abnormal condition of the mind to any inability to act with a culpable state of mind in committing the crime.

[¶27] Weyland's claim of innocence also lacks force in light of the undisputed facts in the State's proffer at the Rule 11 proceeding. *See Malo*, 557 A.2d at 334. The court observed that "the evidence [at trial] would likely establish that on the day in question, [Weyland] engaged in knowing, planful, goal-directed, purposeful behavior before, during, and immediately after she killed [the victim]." The court based its conclusion on (1) her statement to her mother that she "wanted [the victim] dead"; (2) her sudden decision to go to the victim's home upon learning that the victim had informed the son that he had obtained primary custody of the children; and (3) her attempts to destroy and hide the victim's cell phone after she stabbed him. The court acted within its discretion in determining that she had not made a credible claim of innocence based on the undisputed facts suggesting that she acted with a culpable state of mind on the day of the offense. *See Newbert*, 2007 ME 110, ¶ 17, 928 A.2d 769; *Malo*, 577 A.2d at 334.

[¶28] The court concluded that Weyland was motivated to withdraw her plea not because she believed she is innocent but because she had come to believe that she could obtain a better outcome at trial. This determination was based on the court's findings that (1) she would have known about the possibility of advancing an abnormal condition of mind theory pursuant to

17-A M.R.S. § 38 prior to entering her plea and (2) she received advice that she should not have pleaded guilty. The record amply supports the court's finding that she was likely influenced by advice from others after her plea that she should have opted for trial. *See Hillman*, 2000 ME 71, ¶ 11, 749 A.2d 758 (rejecting a defendant's claim of innocence that "was not motivated by [a] differing view of his innocence but, rather, was a later tactical decision").

[¶29] The final consideration is whether there was "[a]ny deficiency in the proceeding at which the defendant entered the plea" in accordance with Rule 11. *Id.* ¶ 8. "We have never required strict compliance with [Rule] 11 in order to uphold a guilty plea." *State v. Andrews*, 624 A.2d 1235, 1236 (Me. 1993). Rather, "a guilty plea is vitiated only if the *total record* fails to establish adequately a factual matrix by which the plea is affirmatively shown to have been voluntarily and understandingly made." *Id.* (alterations omitted) (quotation marks omitted).

[¶30] Contrary to her arguments regarding her limited cognitive capacity, the court found that Weyland was "coherent, engaged, cooperative, and responsive" at the Rule 11 hearing, that she understood the elements of the

charge of murder, and that she entered a knowing plea. In particular, the court found that she

> demonstrated sufficient awareness during the Rule 11 proceeding . . . to question the court's explanation of the *mens rea* element [of murder]. The court considers this exchange to confirm a degree of awareness and engagement on her part at the proceeding rather than, as [Weyland] argues, an indication that she lacked understanding of the elements of the charge or potential defenses thereto.

The court's findings are based on competent evidence in the record, including the court's observations of her at the Rule 11 hearing. *Cf. State v. Boone*, 444 A.2d 438, 443 (Me. 1982) ("[T]he [court] could reasonably infer from the [defendant's] rational and coherent patterns of answers that the defendant was well-informed, knew exactly what he was doing and understood the consequences of his tactical decision."); *Comer*, 584 A.2d at 643 ("[The court's] implicit conclusion that [the defendant] was competent is fully supported by the record which shows [the defendant] to be responsive to questions, cooperative and generally rational and coherent.").

[¶31] Without "proof of any factual misapprehension of the law," the defendant cannot succeed on a motion to withdraw. *Boone*, 444 A.2d at 444. Here, although Weyland presented evidence of her limited understanding of the Rule 11 proceeding, evidence in the record could support the court's finding

that she had not established that she entered a plea without knowledge of the elements of the offense charged. *See State v. Knight*, 482 A.2d 436, 440 (Me. 1984). Based on the foregoing, we determine that the court was within the bounds of its discretion in concluding that Weyland understood the nature of the offense charged and voluntarily entered the plea.

[¶32] Considering the four factors together, none weighs so heavily in Weyland's favor as to justify vacating the trial court's decision. *See Giroux*, 2015 ME 28, ¶ 8, 113 A.3d 229.

B.    Sentencing

[¶33] Weyland next argues that the court misapplied principle in its sentencing determinations. She also asserts that the court "should have imposed a sentence that was more akin to manslaughter than murder" because she "may very well have obtained a manslaughter conviction with a jury."[7] We disagree.

---

[7] She also argues, without any citation to legal authority, that the court abused its discretion in allowing the State to present a video recording created by the victim shortly before his death and a recording of a 9-1-1 call. This argument has no merit. Weyland has not demonstrated that the recordings were factually unreliable or irrelevant. *See State v. Seamon*, 2017 ME 123, ¶ 24, 165 A.3d 342 (describing the standard for the admissibility of evidence at sentencing); *see also Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 ("We will apply the settled appellate rule . . . that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotation marks omitted)).

18

[¶34] Courts must undertake a two-step process when sentencing a defendant for murder. 17-A M.R.S. § 1252-C (2018);[8] *State v. Lord*, 2019 ME 82, ¶ 24, 208 A.3d 781. "In the first step, the court determines the basic period of incarceration, and in the second, the maximum period of incarceration." *State v. Hayden*, 2014 ME 31, ¶ 17, 86 A.3d 1221. During the first step, the court examines "the crime, the defendant's conduct in committing it, and . . . other sentences for similar offenses." *State v. Cookson*, 2003 ME 136, ¶ 38, 837 A.2d 101. The court reaches a basic sentence by "tak[ing] into account the sometimes-competing goals of sentencing that include deterrence, restraint in the interest of public safety, minimization of correctional experience that may promote future criminality, and the elimination of inequalities in sentencing that are unrelated to criminological goals." *State v. Nichols*, 2013 ME 71, ¶ 14, 72 A.3d 503.

[¶35] Our review of the step one analysis focuses on whether the trial court misapplied sentencing principles in determining the basic period of incarceration. *Id.* ¶ 13. Thus, "a basic sentence will survive appellate scrutiny

---

[8] The version of the statute that was in effect at the time of Weyland's sentencing has since been repealed and replaced. P.L. 2019, ch. 113, §§ A-1. A-2 (emergency, effective May 16, 2019).

unless it appears to err in principle." *Cookson*, 2003 ME 136, ¶ 41, 837 A.2d 101 (quotation marks omitted). We discern no such error.

[¶36] The court applied the appropriate sentencing principles to set a basic sentence of forty-five years. The primary consideration in the court's analysis was the children's presence at the scene of the murder. *See State v. Waterman*, 2010 ME 45, ¶ 46, 995 A.2d 243. In *Waterman*, we observed that "children who witness such horrific violence . . . face adverse neurological, psychological, and developmental consequences." *Id.* Accordingly, children witnessing "horrific violence" exacted upon one parent by another is a significant factor in a sentencing decision. *See State v. Diana*, 2014 ME 45, ¶¶ 39, 41, 89 A.3d 132 (affirming a sentence of forty-five years in prison where it was "probable that the boy's knowledge [of the circumstances of his mother's murder] will in the future have the same severe collateral impact that we condemned in *Waterman*" (quotation marks omitted)). The court also highlighted that Weyland's actions were "deliberate," "focused," and "intentional." The court considered the relevant facts and properly applied sentencing principles in setting the basic sentence at forty-five years.

[¶37] At the second step, the court "determine[s] the maximum period of imprisonment . . . by considering all other relevant sentencing factors, both

aggravating and mitigating, appropriate to that case." *Lord*, 2019 ME 82, ¶ 31, 208 A.3d 781 (quotation marks omitted); *see State v. Hewey*, 622 A.2d 1151, 1154 (Me. 1993). The court must undertake this analysis even when the State and the defendant have agreed to a sentence in a plea. *State v. Bean*, 2018 ME 58, ¶¶ 26, 29, 184 A.3d 373. The court did so, evaluating aggravating and mitigating factors and the State's sentencing recommendation as stated in the plea. Thus, we find no error in its application of sentencing principles as to step two.

[¶38] Finally, Weyland suggests that the court should have concluded that her crime was "more akin to manslaughter" than murder and should have sentenced her accordingly. This argument has no merit, and the court did not err in declining to sentence her similarly to defendants convicted of manslaughter. She pleaded guilty to murder, and there was a substantial factual basis for her plea to that charge. The court made detailed findings supported by record evidence at sentencing regarding her culpable state of mind and describing the deliberate nature of her actions. The trial court did not misapply principle when it rejected her argument that her sentence should have reflected her view of the evidence, particularly where her view of the evidence is not consistent with the court's supported findings at sentencing.

The entry is:

Judgment and sentence affirmed.

Verne E. Paradie, Jr., Esq. (orally), Paradie & Rabasco, Lewiston, for appellant Kandee A. Weyland

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2017-154
FOR CLERK REFERENCE ONLY