MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2018 ME 60
Docket:        And-17-319
Argued:        March 7, 2018
Decided:       April 26, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DANNY L. ADAMS

MEAD, J.

[¶1]   Danny L. Adams appeals from a judgment of conviction of manslaughter (Class A), 17-A M.R.S. § 203(1)(A) (2017), entered by the trial court (Androscoggin County, *MG Kennedy, J.*) following his unconditional open guilty plea.[1]   Adams contends that his plea was involuntary because he was coerced, in violation of his constitutional rights against self-incrimination,[2] to accept the truth of all of the facts recited by the State at the plea hearing held

---

[1]   An unconditional guilty plea is tendered when, as here, a defendant does not reserve the right to seek appellate review of a specified ruling of the court.  *See* M.R.U. Crim. P. 11(a)(2).  A plea is "open" "when there is no proposed sentence agreement between the State and the defendant and the sentence is determined by the court after argument from the parties."  *State v. Stevens*, 2017 ME 30, ¶ 2 n.1, 156 A.3d 131; *see also State v. Bean*, 2018 ME 58, ¶ 14, --- A.3d ---.

[2]   The United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V; the Maine Constitution provides that a person accused of a crime "shall not be compelled to furnish or give evidence against himself or herself," Me. Const. art. I, § 6.

pursuant to M.R.U. Crim. P. 11.  He further contends that he should not be required to show cause as to why his appeal should not be dismissed pursuant to *State v. Huntley*, 676 A.2d 501 (Me. 1996), and its progeny, which hold that a defendant may not appeal from a conviction entered upon his plea of guilty except in certain circumstances.  Adams did not move to withdraw his unconditional plea before the court imposed the sentence and does not assert that the trial court lacked jurisdiction or that it imposed an excessive, cruel, or unusual sentence.  We dismiss the appeal.  *See id.* at 503; *State v. Plummer*, 2008 ME 22, ¶ 3, 939 A.2d 687.

## I.  BACKGROUND

[¶2]  The relevant facts are procedural and are not disputed.  In February 2015, Adams was charged by indictment with murder, 17-A M.R.S. § 201(1)(B) (2017), and manslaughter (Class A), 17-A M.R.S. § 203(1)(A), following the death of his infant son.  Two attorneys were appointed to represent him.  Following pretrial motions, a jury trial was scheduled for February 17, 2017.

[¶3]  On February 8, 2017, Adams appeared with counsel and entered an unconditional open guilty plea to the manslaughter count; the State later dismissed the murder charge.  *See* M.R.U. Crim. P. 11.  At the Rule 11 hearing,

after Adams explicitly waived his right to remain silent and the court admonished him to "listen carefully," the State recited the evidence that it expected to present at trial, which included Adams's statements to police officers that numerous bruises on the child's forehead and around his mouth likely resulted from him (Adams) forcefully putting the baby's pacifier in his mouth two or three times, holding it there by putting the palm of his hand on the pacifier and spreading his fingers across the child's face, and then putting the child face down in his crib with the pacifier inserted and holding him down against the mattress.

[¶4]   Adams's counsel told the court that the State's recitation was consistent with the discovery.  The court then engaged in a colloquy with Adams:

> COURT:  And do you have anything that you would like to correct about what was just said?
>
> ADAMS:  No.  No, Your Honor.
>
> Q:  And have you had enough time to speak with your attorney about this matter?
>
> A:  Yes, Your Honor.
>
> Q:  Has he done the things that you have asked him to do in terms of representing you?
>
> A:  Yes, Your Honor.

> Q: Are you satisfied with his services?
>
> A: Yes, Your Honor.
>
> Q: Are you pleading guilty today because you are guilty?
>
> A: Yes, Your Honor.

The court found that the plea was made voluntarily and accepted it. It set the matter for sentencing following its receipt of sentencing memoranda from the parties.

[¶5] In chambers at the sentencing hearing almost five months later, the court shared the State's concern that Adams's sentencing memorandum differed significantly from the State's recitation of facts at the Rule 11 hearing, principally in suggesting that the bruises on the baby's face were the result of Adams's resuscitation efforts and not his death-producing conduct. Following a discussion about the specific conduct for which Adams was accepting responsibility and whether his admitted conduct continued to support his guilty plea to a charge of manslaughter, the court recessed the chambers conference so that Adams's attorneys could speak to him before returning for further discussions.

[¶6] When the chambers conference resumed, Adams's attorney said that after meeting with him, "we confirmed again today what we understood

before today, that Danny Adams is taking responsibility for causing his son's death. He indeed has pled guilty to this charge. He is responsible for his son's death. He did cause his son's death . . . as he agreed to the facts presented in the Rule 11 previously. . . . To the extent that [a medical] report implies . . . in any kind of way at all that Danny Adams's conduct was not the cause of the child's death, then we would reject that . . . ." After confirming with defense counsel that Adams wished to proceed with sentencing, the court convened a hearing in the courtroom.

[¶7] At that hearing, asserting that "[a]t the time of the Rule 11, the defendant admitted to the following facts," the State again recited that Adams had inflicted the bruises on the child when he caused the child's death, concluding by saying that "those injuries, contrary to the defendant's claim in his sentencing memo, were not the result of resuscitative efforts," but rather "conduct that the defendant pled guilty [to]." The State pointed to Adams's conduct as one factor in support of its recommended sentence of twenty-five years to the Department of Corrections, with all but seventeen years suspended, and six years of probation. Defense counsel made an extensive presentation of mitigating facts, but acknowledged that Adams "was, as the State has described . . . completely negligent, completely reckless," although

"[h]e didn't intend to cause [the child's] death." Addressing the court directly, Adams said, "I did do it. I'm not denying any of that. I take full responsibility for what I did. Everything I did that night and the night before was horrible."

[¶8]  As it began its sentencing analysis the court asked rhetorically, "[W]hat is it that the defendant did?" and then outlined in detail its understanding of the evidence. After confirming its accuracy with defense counsel, the court addressed Adams:

> COURT:  Mr. Adams, at the time you entered your guilty plea to the charge of manslaughter, were you aware that was the information the State would . . . provide to the Court?
>
> ADAMS:  Yes, ma'am.
>
> Q:  Mr. Adams, having heard again the evidence the State would present if this matter were to go to trial, is there anything that you would like to correct?
>
> A:  No, ma'am.
>
> Q:  [D]id anyone make any threats or promises to you to get you to change your plea from not guilty to guilty?
>
> A:  No, ma'am.
>
> Q:  [A]re you pleading guilty today because you are guilty?
>
> A:  Yes, ma'am.
>
> Q:  And having pled guilty, do you wish to maintain your guilt and go forward with sentencing today?

A:  Yes, ma'am.

Q:  Are you making that decision voluntarily?

A:  Yes, ma'am.

Q:  Meaning that it is of your own free will?

A:  Yes, ma'am.

[¶9]  The court completed its sentencing analysis, arriving at a basic sentence of eighteen years; a maximum sentence of twenty years; and a final sentence of twenty years' imprisonment, with all but fifteen years suspended, and six years of probation.  *See* 17-A M.R.S. § 1252-C (2017).

[¶10]  Adams timely appealed and filed an application to appeal from the sentence.  On July 27, 2017, citing *Huntley*, 676 A.2d at 503, we ordered Adams to show cause within fourteen days as to why his direct appeal from a guilty plea should not be dismissed.  After Adams filed a response, we ordered that the appeal would proceed in the usual course and directed the parties to address in their briefs whether a criminal defendant has any constitutional, statutory, or rule-based right to appeal from a conviction following a guilty plea where the defendant knows of no valid basis for such an appeal.[3]  By order

---

[3] We also directed the parties to address the question of whether an indigent defendant has a right to the appointment of new appellate counsel to review the record to determine whether any valid basis for appeal following a guilty plea exists.

dated August 24, 2017, the Sentence Review Panel denied Adams leave to appeal from the sentence.

## II. DISCUSSION

[¶11] In *Huntley*, we said that

[a] conviction after a guilty plea involves no decision by the court regarding the defendant's criminal guilt and therefore provides no source of decisional error by the court regarding criminal guilt. No *direct* appeal pursuant to 15 M.R.S.A. § 2115 (Supp. 1995)[4] asserting errors in the determination of criminal guilt may be taken from a conviction after a guilty plea (other than a conditional guilty plea entered pursuant to M.R. Crim. P. 11(a)(2)[5]), except on grounds of jurisdiction or excessive, cruel or unusual punishment, because there is no decision by the court to appeal from. Challenges to a conviction after a guilty plea on grounds of involuntariness of the plea, lack of knowledgeability on the part of the defendant regarding the consequences of his plea, ineffective assistance of counsel, misrepresentation, coercion or duress in securing the plea, the insanity of the pleader, or noncompliance with the requirements of M.R. Crim. P. 11 are collateral and may be pursued only by post-conviction review . . . .

676 A.2d at 503; *see State v. Gach*, 2006 ME 82, ¶ 9, 901 A.2d 184 (same). In this case, Adams pleaded guilty unconditionally, did not move to withdraw his

---

[4] The statute has been amended twice since *Huntley* was decided; neither amendment affects this appeal. P.L. 1999, ch. 731, § ZZZ-17 (effective Jan. 1, 2001); P.L. 2007, ch. 475, § 5 (effective June 30, 2008).

[5] The substance of the current rule is identical to its predecessor. *Compare* M.R.U. Crim. P. 11(a)(2) *with* M.R. Crim. P. 11(a)(2) (West 1996).

plea,[6] and does not contend that the court lacked jurisdiction or that it imposed an unconstitutional sentence. Accordingly, his direct appeal must be dismissed.

[¶12] *Huntley* applies even when, as here, a defendant contends that the court violated his constitutional rights at the time he entered a guilty plea.[7] In *Plummer*, considering the defendant's contention that the trial court violated his due process rights in accepting his guilty plea and imposing sentence, we held that

> Plummer alleges neither a jurisdictional infirmity, nor excessive, cruel, or unusual punishment. His guilty plea was entered unconditionally, and he made no motion to withdraw his plea prior to his sentencing. Plummer's contentions are thereby not preserved for appellate review, and Plummer is barred from pursuing this direct appeal of his conviction.

2008 ME 22, ¶¶ 1, 3, 939 A.2d 687. *See also State v. Stevens*, 2017 ME 30, ¶¶ 1, 6, 156 A.3d 131 (applying *Huntley* analysis to defendant's claim that the court did not establish that his plea was voluntary; dismissing appeal); *Gach*, 2006 ME 82, ¶ 8-9, 901 A.2d 184 (applying *Huntley* analysis to a claim that defendant "did not voluntarily, knowingly, and intelligently waive his right to

---

[6] When the court offered Adams a chance to withdraw his plea at the sentencing hearing, asking him, "[H]aving pled guilty, do you wish to maintain your guilt and go forward with sentencing today?" Adams answered, "Yes, ma'am."

[7] This is distinct from an assertion that the statute a defendant is convicted of violating is unconstitutional; that claim is reviewable on direct appeal. *Class v. United States*, 583 U.S. ---, 138 S. Ct. 798, 802-03 (2018). Adams does not contend that 17-A M.R.S. § 203 (2017), criminalizing manslaughter, is unconstitutional.

counsel"; dismissing appeal). Adams's remedy, if any, for his claim that the court coerced his plea through self-incrimination by compelling him to accept the State's recitation of facts in toto lies in the post-conviction review process. *See Huntley*, 676 A.2d at 503 ("Challenges to a conviction after a guilty plea on grounds of involuntariness of the plea . . . [or] coercion or duress in securing the plea . . . are collateral and may be pursued only by post-conviction review . . . ."); 15 M.R.S. §§ 2121-2132 (2017).

[¶13]   Adams provides us no persuasive reason to depart from our long-standing jurisprudence strictly limiting direct appeal following a guilty plea, nor are we persuaded that a show cause order is an impermissible method of requiring an appellant to make a prima facie demonstration that a direct appeal following a guilty plea is not subject to dismissal.

[¶14]   Adams asserts that an appeal in the usual course, potentially with the assistance of "fresh eyes" or specialized appellate counsel, is always required in such cases in order to preserve a defendant's rights.  As a practical matter, however, if one of the rare grounds for appeal set out in *Huntley* exists—i.e., a lack of jurisdiction in the trial court or a sentence imposing unconstitutional punishment—then effective trial counsel would very likely

recognize that issue.[8]   A defendant need only identify the argument in his response to a show cause order for his appeal to proceed in the usual course.  If trial counsel were ineffective in failing to preserve a valid ground for appeal by failing to adequately respond to the show cause order, that defect could be corrected on post-conviction review.  *See* 15 M.R.S. § 2130 (providing that a post-conviction court may "grant[] the right to take an appeal from the criminal judgment").  We note that Adams himself, utilizing our established procedure, has received a full review of his arguments on appeal.[9]

The entry is:

Appeal dismissed.

---

[8] Adams correctly notes that a direct appeal following a guilty plea may also be taken from an illegal sentence, but that is so only "if a constitutional or statutory violation is apparent from the record."  *State v. Davenport*, 2016 ME 69, ¶ 9, 138 A.3d 1205 (analyzing a defendant's direct appeal following a guilty plea); *see also Bean*, 2018 ME 58, ¶ 16, --- A.3d ---.  No facial illegality appears on this record.  Adams's bold assertions of fact in his brief that might support his argument—"*Defendant was told by counsel that the court had determined that defendant was required to admit all of the State's incriminating evidence.  Indeed, the fact that counsel advised defendant he had no right to insist on his version of events heightens the effect of the pressure on defendant to testify involuntarily*." (Emphasis added.)—are no more than bare speculation, as the record is devoid of any mention of what Adams and his trial counsel actually discussed during any private conversations.  At oral argument, Adams's appellate counsel acknowledged that these asserted facts in the appellant's brief are actually speculative "inferences."  Accepting such "facts" would require us to make findings based on the kind of evidence that would be developed at a post-conviction hearing, where Adams and trial counsel would presumably testify.  That is a clear rationale for our requirement that a sentencing illegality be "apparent from the record" before it will be considered on direct appeal.  *Davenport*, 2016 ME 69, ¶ 9, 138 A.3d 1205.

[9] At oral argument, Adams agreed that "in this case, everything worked perfectly."

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Danny L. Adams

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Androscoggin County Superior Court docket number CR-2015-13
FOR CLERK REFERENCE ONLY