Concurrence: ALEXANDER, J.
 

 SAUFLEY, C.J.
 

 [¶ 1] Andrew B. Bean applied for leave to appeal from a sentence entered in the Unified Criminal Docket (Oxford County,
 
 Clifford, J.
 
 ) following his guilty plea, entered upon an agreement that his sentence would not exceed an agreed upon "cap." The Sentence Review Panel granted his application for sentence review. Bean contends that, notwithstanding the cap agreement with the State, through which he pleaded guilty to two counts of aggravated criminal operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(2) (2017), and possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1) (2017), the sentencing court was required to explain its selection of the basic, maximum, and final periods of incarceration.
 
 See
 
 17-A M.R.S. § 1252-C (2017) ; M.R.U. Crim. P. 32(a)(3). The State argues that any error in the court's articulation of the sentence was harmless. We agree that the error was harmless, and we affirm the sentence.
 

 I. BACKGROUND
 

 [¶ 2] When Bean appeared in court on November 29, 2016, he pleaded guilty to what would become his tenth and eleventh convictions for operating under the influence. He entered those guilty pleas with the advice of counsel and pursuant to an agreement that the State would dismiss certain other charges against him and would recommend concurrent sentences of ten years in prison, with all but five years suspended and three years of probation, for the aggravated OUI convictions. If the court rejected the State's recommendation as too low, Bean would be allowed to withdraw his pleas.
 
 See
 
 M.R.U. Crim. P. 11A(d)-(e). With the State's agreement, Bean also reserved the right to argue that the court should exercise its discretion to sentence him to less time in prison.
 
 [1]
 
 The court declined Bean's request for a lower sentence and accepted the recommendation of the State. Arguing that the court did not sufficiently articulate its reasons for accepting the State's recommendation, and that the court failed to separately state basic, maximum, and suspended portions of each sentence pursuant to 17-A M.R.S. § 1252-C, Bean seeks a remand for a new sentencing.
 

 [¶ 3] The details are these, taken from the record and the transcript of the sentencing. On November 21, 2015, Maine game wardens arrested Bean after he drove his truck to a hunting camp where the game wardens were present to monitor a dispute. Bean was "very obviously intoxicated." The wardens conducted a series of field sobriety tests, which Bean failed. Bean then submitted to a blood alcohol test using an Intoxilyzer, and he registered a 0.21 blood alcohol content. Beside him in the passenger compartment of his truck was a rifle, which Bean was prohibited
 from possessing because of his criminal history.
 

 [¶ 4] Very shortly thereafter, on December 17, 2015, Bean was charged by indictment with possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1), criminal OUI (Class C), 29-A M.R.S. § 2411(1-A)(B)(2), and fraudulently obtaining a license or permit (Class E), 12 M.R.S. § 10757 (2017).
 

 [¶ 5] On December 20, 2015-three days after his indictment for the first arrest and only one month after that arrest-Bean was arrested again. This time, a Paris police officer observed Bean driving well under the speed limit and weaving back and forth over the road. When the police officer pulled him over, Bean stated, "I'm caught, I confess, I'm drunk, just take me to jail." He submitted to an Intoxilyzer test and registered a 0.29 blood alcohol content. Bean was later charged by indictment with criminal OUI (Class C), 29-A M.R.S. § 2411(1-A)(B)(2), attaching false plates (Class E), 29-A M.R.S. § 2104(1) (2017), and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2017).
 

 [¶ 6] A year after the first of the two stops, on November 29, 2016, Bean entered his pleas of guilty. He was represented by counsel. The court held a Rule 11 hearing on both indictments to determine whether to accept the plea agreement that Bean had reached with the State.
 
 See
 
 M.R.U. Crim. P. 11. Pursuant to the agreement between Bean and the State, the State would dismiss the charges of fraudulently obtaining a license or permit, attaching false plates, and violating a condition of release. It would also dismiss the two charges of Class C criminal OUI and charge Bean by information with two counts of aggravated OUI (Class B), 29-A M.R.S. § 2411(1-A)(D)(2). Thus, conditioned upon the court's acceptance of the agreement, Bean entered a plea of guilty to two counts of aggravated OUI (Class B) and one count of possession of a firearm by a prohibited person (Class C). Bean waived all rights related to trial, including his right to appeal from the convictions. After accepting Bean's guilty pleas, the court proceeded immediately to the sentencing hearing.
 

 [¶ 7] The State made the following recommendation to the court:
 

 THE COURT: [I]s the State recommending a cap on this case?
 

 THE STATE: Yes we are, Your Honor. On the two OUI counts, we are recommending sentences of ten years, all suspended but five years; there are minimum fines of I believe $2,100 each, as well as a six-year license suspension.
 

 As a rationale for this recommendation, the State pointed to Bean's high blood alcohol content and the proximity in time between the two arrests. The State also emphasized Bean's extensive history of operating under the influence, including his nine prior convictions for operating under the influence and five convictions for operating after suspension. The State contended that a more lenient sentence would fail to meet the statutory sentencing objective of restraining convicted persons in the interest of public safety.
 
 See
 
 17-A M.R.S. § 1151(1) (2017).
 

 [¶ 8] Bean's counsel then argued for a sentence of five years of imprisonment, with all but twenty-one months suspended, and two years of probation. In so doing, he emphasized Bean's cooperation with the arresting officers and the fact that Bean had not harmed anyone in either incident.
 

 [¶ 9] The court accepted the State's recommendation regarding the sentences for the OUI convictions and declined to accept Bean's request for the more favorable sentence. It sentenced Bean to ten years' imprisonment, all but five years suspended,
 with three years of probation for each count of aggravated OUI, to be served concurrently with one another. In addition, the court sentenced Bean to twenty-one months' imprisonment for the possession of a firearm by a prohibited person, also to be served concurrently with the other sentences.
 
 [2]
 

 [¶ 10] In announcing the sentence, the court expressly acknowledged the legislatively established goals of sentencing, noting that "the prevention of crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety, all apply to this case."
 
 See
 
 17-A M.R.S. § 1151 (2017). The court also stated, "To minimize correctional sentence experiences which serve to promote further criminality also applies to every ... substantial sentence that we're talking about. And to give fair warning of the nature of the sentences that may be imposed on the conviction of a crime, to encourage differentiation among defendants with a view to [a just] individual sentence."
 
 See id.
 
 The court did not specifically articulate a basic and maximum period of incarceration,
 
 see
 
 17-A M.R.S. § 1252-C ; nor did the court describe its rationale for suspending a portion of the sentences.
 

 [¶ 11] Bean timely applied for leave to appeal from his sentence, and the Sentence Review Panel granted the application.
 
 See
 
 M.R. App. P. 20(b) (Tower 2016);
 
 [3]
 
 15 M.R.S. § 2152 (2017).
 

 II. DISCUSSION
 

 [¶ 12] Bean contends that the sentencing court erred by failing to conduct the sentencing procedure that the Legislature has codified at 17-A M.R.S. § 1252-C, which was enacted following our decision in
 
 State v. Hewey
 
 ,
 
 622 A.2d 1151
 
 , 1154-55 (Me. 1993). The State argues that any error in the court's sentencing procedure was harmless. We address each of these arguments in turn below. We also discuss the availability of a discretionary appeal where, as here, a defendant enters a plea pursuant to an agreement that the State will recommend a particular sentence as a "cap," and the court imposes a sentence that does not exceed the sentence recommended by the State.
 

 A. Plea Terminology and Availability of Review
 

 [¶ 13] The availability of a sentence appeal differs depending on the context of the sentencing. Because there are several types of potential plea circumstances and agreements, because the parties may each interpret a discussion or agreement differently, and because the language used to describe the context and any agreement will be critical to determining the availability of an appeal from the sentence, we begin by summarizing the availability of sentencing appeals in each of the various circumstances in which a defendant enters a plea of guilty.
 
 [4]
 

 1. Open Plea
 

 [¶ 14] When a defendant enters a plea of guilty without any agreement or arrangement with the State as to the sentence that the court will be asked to impose, we refer to that as an "open" plea.
 
 See
 

 State v. Stevens
 
 ,
 
 2017 ME 30
 
 , ¶ 2 n.1,
 
 156 A.3d 131
 
 . Both the State and the defendant are free to present arguments on any aspect of the sentence that could be imposed. In an open plea, the parties may argue for, and the court may enter, any sentence authorized by law. The court's authority to exercise its full discretion within the law is identical to its sentencing authority following a verdict of guilty after a trial.
 

 [¶ 15] Once the defendant has pleaded guilty in an open plea, following a colloquy between the defendant and the court to assure that the defendant understands the many rights that are waived by entering the plea,
 
 see
 
 M.R.U. Crim. P. 11, the court may, within the limits of the law, impose whatever sentence it determines to be justified and supported by the facts of the case. When the plea is an open plea, the defendant does not retain the right to withdraw the guilty plea after sentencing in the event that he disagrees with the final sentence.
 
 [5]
 

 [¶ 16] Unless there has been a waiver of appeal, a defendant who enters an open plea does retain the right to file an application for review of any sentence longer than a year.
 
 See
 
 15 M.R.S. § 2151 (2017). The Sentence Review Panel of the Supreme Judicial Court then has the discretion to decide whether to grant that application and allow an appeal to proceed.
 
 See
 

 id.
 

 § 2152. The defendant also has the right to file a direct appeal of the sentence when the constitutionality or legality of the sentence can legitimately be challenged.
 
 [6]
 

 See
 

 State v. Hoover
 
 ,
 
 2017 ME 158
 
 , ¶¶ 18, 40,
 
 169 A.3d 904
 
 .
 

 [¶ 17] As with a sentence imposed by the court following a trial, the sentencing judge's full analysis of the factors outlined in section 1252-C is at its most critical in the context of an open plea.
 
 See
 

 State v. Prewara
 
 ,
 
 687 A.2d 951
 
 , 955 (Me. 1996) (emphasizing the need for a full analysis in the context of an open plea).
 

 2. Plea Upon Joint Recommendation
 

 [¶ 18] At the other end of the spectrum of possible plea agreements is a fully agreed upon plea, which we refer to as a plea upon joint recommendation.
 
 See
 
 M.R.U. Crim. P. 11A(a)(4).
 
 [7]
 
 In the context of a joint recommendation plea, the defendant enters a plea of guilty, again following a thorough colloquy with the court to
 assure that the defendant understands the rights that he is forever waiving.
 
 See
 
 M.R.U. Crim. P. 11(b)-(c). A plea entered upon the joint recommendation of the parties will become operative only if the court accepts the joint recommendation or imposes a sentence that is more favorable to the defendant.
 
 See
 
 M.R.U. Crim. P. 11A(d)-(e). If the court decides that it would impose a sentence that is
 
 less
 
 favorable to the defendant than what the parties have jointly recommended, the defendant must be allowed to withdraw his guilty plea, and all of his rights, including the right to trial, remain intact.
 
 See
 
 id.
 

 [¶ 19] Before the court determines whether it will accept and impose the jointly recommended sentence, it will hear from the State and the defendant, and in certain circumstances, the victim, regarding the facts of the case.
 
 See
 
 M.R.U. Crim. P. 11(b), (e). The court will then undertake an analysis to assure that the sentence meets the statutory framework and sentencing goals. In many instances, the court's analysis will not be extensive because both the State and the defendant have agreed that the proposed sentence is appropriate. However, the court must assure itself and the public, among other things, that the sentence is legal, that the proposal falls within the range of the court's discretion, and that the sentence meets the sentencing goals established by the Legislature.
 

 [¶ 20] In contrast to the defendant's appellate options following an open plea, the defendant
 
 does not
 
 have the right to file an application for discretionary review of an agreed-upon sentence when the court accepts the recommendation.
 
 See
 
 15 M.R.S. § 2151(2) (excluding from our discretionary review sentences imposed as a result of the court accepting a plea with an agreed-upon sentence pursuant to M.R.U. Crim. P. 11A(a)(2) and (4) ). A defendant's application for review of a sentence entered upon joint recommendation will therefore be dismissed.
 

 [¶ 21] In addition, when the joint recommendation is fully accepted by the court, the defendant will be deemed to have waived any claim of constitutional disproportionality or cruel and unusual punishment.
 
 Cf.
 

 State v. Chavarria
 
 ,
 
 146 N.M. 251
 
 ,
 
 208 P.3d 896
 
 , 900-01 (2009) (holding that a defendant who pleads guilty and understands the maximum potential sentence waives his right to appeal on grounds of cruel and unusual punishment). Moreover, any later discovered illegality in the sentence should be addressed through a motion to correct the sentence pursuant to M.R.U. Crim. P. 35.
 
 [8]
 
 Thus, although there may be instances in which a direct appeal may be taken to address an illegality following a plea upon joint recommendation, those instances will be rare, and a direct appeal that does not clearly assert such an illegality will be dismissed.
 

 3. Cap Plea
 

 [¶ 22] In some circumstances, as in this case, the State and the defendant may agree that the defendant will enter a guilty plea and the State will recommend a particular sentence, but the State agrees that the defendant may reserve the right to argue for a more favorable sentence.
 
 See, e.g.,
 

 State v. Cook
 
 ,
 
 2011 ME 94
 
 , ¶ 14,
 
 26 A.3d 834
 
 . This is often referred to as a "cap plea" because the State's recommendation becomes the harshest sentence-the cap-that the court can impose while accepting
 the plea agreement.
 
 See
 
 M.R.U. Crim. P. 11A(d).
 

 [¶ 23] When the sentence falls within those that are subject to an application for discretionary appellate review,
 
 see
 
 15 M.R.S. § 2151, and when the defendant has not explicitly waived the right to file such an application, the defendant may file an application for leave to appeal that part of the sentence for which the defendant reserved the right to argue to the sentencing court.
 
 [9]
 

 [¶ 24] A defendant may explicitly waive his right to appeal the sentence pursuant to a plea agreement that also allows him to argue for a sentence more favorable than the State's recommendation. To accomplish such a waiver, however, the defendant must clearly and unambiguously state an intent to waive the right to appeal, and the waiver must be made on the record at the Rule 11 hearing.
 

 [¶ 25] As with other types of pleas, the defendant in a cap plea may file a direct appeal of a sentence if there is a legitimate claim of illegality, including any constitutional violation. As always, however, a direct appeal that does not support a claim of actual illegality will be dismissed.
 
 See
 

 State v. Ricker
 
 ,
 
 2001 ME 76
 
 , ¶ 18,
 
 770 A.2d 1021
 
 .
 

 B. Bean's Appeal
 

 [¶ 26] The sentence imposed on Bean followed a cap plea. At the sentencing, Bean agreed to plead guilty, knowing what sentence the State would recommend, and knowing that he would not have the right to withdraw the plea if the court accepted the State's recommendation. He did, however, reserve the right to argue for a shorter underlying sentence, for a shorter unsuspended portion of the sentence, and for a shorter term of probation.
 

 [¶ 27] Bean did not explicitly waive his right to apply for a discretionary review of the sentence imposed. Accordingly, as explained above, on this cap plea Bean retained the right to apply for leave to appeal the sentence through the discretionary sentence review process set forth in 15 M.R.S. § 2151. Bean did apply for leave to appeal, the Sentence Review Panel granted his application, and we now proceed to review the propriety of his sentence.
 

 [¶ 28] To analyze the propriety of Bean's sentence, we review the court's analysis of the multiple steps required in sentencing.
 
 See
 
 17-A M.R.S. § 1252-C. In so doing, we look to the trial court's articulation of the basic sentence, the identification and weighing of the aggravating and mitigating factors in order to determine the maximum sentence, and the factors it considered to determine whether any part of the sentence will be suspended.
 
 [10]
 

 ibr.US_Case_Law.Schema.Case_Body:v1">See
 

 id.
 

 [¶ 29] Although the court did quite clearly address the
 
 goals
 
 of sentencing,
 
 see
 
 17-A M.R.S. § 1151, it did not undertake a section 1252-C analysis on the record. No exception to the section 1252-C requirements is set forth in the statute regarding a cap plea.
 
 See
 

 id.
 

 The statute requires at least a basic 1252-C analysis, and because of the potential for appellate review, that basic analysis should have been provided
 to the parties and the public to explain the court's decision to accept the cap proposed by the State.
 
 See
 
 M.R.U. Crim. P. 32(a)(3). Because the court in this instance did not articulate the section 1252-C elements of the sentence or explain a rationale for the ultimate sentence imposed, the court erred.
 

 C. Harmless Error
 

 [¶ 30] As have many other courts, we have held that errors in sentencing are subject to a harmless error analysis.
 
 See, e.g.
 
 ,
 
 State v. Svay
 
 ,
 
 2003 ME 93
 
 , ¶¶ 16-17,
 
 828 A.2d 790
 
 ;
 
 Williams v. United States
 
 ,
 
 503 U.S. 193
 
 , 202-03,
 
 112 S.Ct. 1112
 
 ,
 
 117 L.Ed.2d 341
 
 (1992). In conducting any harmless error analysis, we are guided by Maine Rule of Unified Criminal Procedure 52(a), which states, "Any error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded."
 

 [¶ 31] Generally, "harmful error is error that [is] sufficiently prejudicial to have affected the outcome of the proceeding."
 
 State v. Pillsbury
 
 ,
 
 2017 ME 92
 
 , ¶ 18,
 
 161 A.3d 690
 
 (quotation marks omitted). In the context of an error in the application of sentencing procedures, a defendant's substantial rights are not compromised if we determine, by a review of the entire record, that even if proper procedures had been followed, it is highly probable that the sentence would not be different.
 
 See
 

 Svay
 
 ,
 
 2003 ME 93
 
 , ¶ 16,
 
 828 A.2d 790
 
 .
 

 [¶ 32] In
 
 State v. Cobb
 
 , we applied a harmless error analysis where the sentencing court had improperly considered unproven aggravating factors in setting the maximum term of imprisonment.
 
 2006 ME 43
 
 , ¶ 24,
 
 895 A.2d 972
 
 . We held that although it was error for the sentencing court to consider those aggravating factors, the error did not affect the defendant's substantial rights because it was "clear that the court would have concluded that Cobb's criminal history, combined with the nature and seriousness of the crime, warranted setting the maximum sentence in the upper tier, even without the [improper] evidence."
 

 Id.
 

 [¶ 33] Here, Bean pleaded guilty to two counts of Class B aggravated OUI, each of which, standing alone, carried the potential for a maximum sentence of ten years.
 
 See
 
 17-A M.R.S. § 1252(2)(B) (2017). The record before the sentencing court established that Bean had a blood alcohol content of 0.21 upon his first arrest and 0.29 upon his second arrest, and that the second arrest occurred within weeks of the first. His high blood alcohol content in each incident would have justified a correspondingly severe basic period of incarceration.
 
 [11]
 

 See
 

 State v. Seamon
 
 ,
 
 2017 ME 123
 
 , ¶ 12 n.2,
 
 165 A.3d 342
 
 (explaining that the "particular nature and seriousness" of the specific offense for which a defendant is charged is the proper focus in setting the basic sentence). With respect to a maximum sentence, Bean's
 
 nine
 
 prior convictions for OUI and
 
 five
 
 convictions for operating after revocation were aggravating factors that would have warranted a ten-year term of imprisonment as the maximum sentence for either or both of the OUI convictions.
 
 See
 
 15 M.R.S. § 1252(2)(B). Finally, given that the court was issuing a sentence for convictions
 "arising from different criminal episodes," and that Bean had been released on bail when he was arrested for the second offense, the court was authorized, within its discretion, to impose consecutive rather than concurrent sentences.
 
 See
 
 17-A M.R.S. § 1256(2)(A), (C) (2017) ;
 
 State v. Downs
 
 ,
 
 2009 ME 3
 
 , ¶ 30,
 
 962 A.2d 950
 
 .
 

 [¶ 34] Ultimately, for his tenth and eleventh OUI convictions, arising from incidents that occurred within weeks of each other, Bean received an unsuspended sentence of five years, with an underlying sentence of ten years. Although he could legally have received consecutive unsuspended terms that totaled twenty years, pursuant to the State's recommended sentence cap, he did not. The sentencing court made it clear in imposing the sentence that "the restraint of convicted persons when required in the interest of public safety" was very much a part of the court's analysis. On this record, there can be little question that public safety demanded a substantial sentence. The court would have acted well within its discretion to have rejected the plea agreement entirely as insufficiently protective of public safety. On a review of the entire record, the absence of a section 1252-C analysis was not sufficiently prejudicial to affect the outcome of the proceeding and did not affect Bean's substantial rights.
 

 The entry is:
 

 Sentence affirmed.
 

 It was asserted at oral argument that Bean's right to argue for a more favorable sentence was not part of the plea agreement but was instead the result of an impromptu and informal request made immediately prior to the Rule 11 hearing. However, because Bean in fact argued for a more favorable sentence than that recommended by the State, and the State did not object, we assume for purposes of this appeal that this was a term of the plea agreement entered into between Bean and the State. We note, however, that M.R.U. Crim. P. 11A(b) requires the disclosure of a plea agreement in open court in order to allow for adequate appellate review. An essential term of a plea agreement-such as the right to argue for a more favorable sentence, which preserves the right to seek discretionary review-should be disclosed and recorded.
 

 In imposing the firearms sentence, the court rejected a recommendation by the State for a five-year term of imprisonment. All of the sentences were to be served concurrently with a sentence of twenty-one months' imprisonment for a federal conviction arising from the November 21, 2015, incident.
 

 The Maine Rules of Appellate Procedure were restyled effective for appeals filed on or after September 1, 2017.
 
 See
 
 M.R. App. P. 1. Because Bean filed his application for leave to appeal from his sentence before September 1, 2017, the restyled Maine Rules of Appellate Procedure do not apply.
 

 We refer to guilty pleas throughout this opinion, but we recognize that the defendant's plea may be entered as a nolo contendere plea or an "Alford" guilty plea if the court accepts that plea.
 
 See
 
 M.R.U. Crim. P. 11(a) ;
 
 see also
 

 North Carolina v. Alford
 
 ,
 
 400 U.S. 25
 
 , 37,
 
 91 S.Ct. 160
 
 ,
 
 27 L.Ed.2d 162
 
 (1970) ;
 
 Oken v. State
 
 ,
 
 1998 ME 196
 
 , ¶ 2 n.1,
 
 716 A.2d 1007
 
 .
 

 Nor is the defendant's right to withdraw his plea
 
 prior
 
 to the imposition of sentence absolute. Instead, the sentencing court has discretion regarding whether to permit the defendant to do so, and must consider "[t]he length of time between entering the plea and seeking to withdraw it; [t]he potential prejudice to the State; [t]he defendant's assertions of innocence; and [a]ny deficiency in the proceeding at which the defendant entered the plea in accordance with M.R. Crim. P. 11."
 
 State v. Hillman
 
 ,
 
 2000 ME 71
 
 , ¶ 8,
 
 749 A.2d 758
 
 .
 

 When a direct appeal of a sentence is filed without an indication of a legitimate basis for a claim of illegality, including a constitutional violation, we may issue a show cause order requiring the defendant to demonstrate why the direct appeal has a legitimate basis and should not be dismissed.
 

 The same procedures and limitations are applicable when the state elects, pursuant to M.R.U. Crim. P. 11A(a)(2), not to oppose the recommendation of the defendant rather than explicitly agreeing to the joint recommendation.
 

 A defendant who has not waived his right to do so may also appeal directly from a
 
 conviction
 
 entered upon a guilty plea pursuant to a joint recommendation by challenging the constitutionality of the statute defining the offense for which he was convicted.
 
 See
 

 Class v. United States
 
 , 583 U.S. ----,
 
 138 S.Ct. 798
 
 , 803,
 
 200 L.Ed.2d 37
 
 (2018).
 

 An appeal from the imposition of restitution will be limited by 15 M.R.S. § 2151(3) and 17-A M.R.S. § 1330-A (2017).
 

 Ordinarily, we review the basic sentence established by a court for misapplication of principle and the maximum and final sentence for abuse of discretion.
 
 State v. Reese
 
 ,
 
 2010 ME 30
 
 , ¶¶ 22-23,
 
 991 A.2d 806
 
 . Here, the issue is one of compliance with 17-A M.R.S. § 1252-C generally, and we therefore apply a de novo review.
 
 State v. Harrell
 
 ,
 
 2012 ME 82
 
 , ¶ 4,
 
 45 A.3d 732
 
 .
 

 Bean contends that the sentencing court "likely" imposed a basic term of imprisonment "at or near the statutory maximum," intended for particularly egregious crimes.
 
 State v. Stanislaw
 
 ,
 
 2011 ME 67
 
 , ¶ 13,
 
 21 A.3d 91
 
 . However, the ultimately imposed underlying ten-year sentence is likely a result of a combination of a higher than minimum basic sentence and the court's consideration of the extraordinary aggravating factors properly considered in calculating the maximum period of incarceration-the number of prior convictions and the proximity in time between his arrests.