MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 57
Docket:      Cum-24-282
Argued:      May 6, 2025
Decided:     June 26, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

DAMION L. BUTTERFIELD

LIPEZ, J.

[¶1]  Damion L. Butterfield appeals from a judgment of conviction of murder and other offenses, entered by the trial court (Cumberland County, *MG Kennedy, J.*) following his plea of guilty.  He contends that the court abused its discretion by denying his request to withdraw his guilty plea, which was entered after trial but before the jury announced its verdict, and by denying his motion for a new trial.  Butterfield also appeals from his sentence of thirty-five years in prison.  *See State v. Butterfield*, No. SRP-24-283 (Me. Sent. Rev. Panel Jul. 31, 2024) (granting leave to appeal the sentence).  We disagree that the court abused its discretion and affirm Butterfield's conviction.  We dismiss Butterfield's appeal of his sentence because discretionary review is unavailable for a sentence imposed pursuant to a joint recommendation of the parties.  *See*

2

15 M.R.S. § 2151(2) (2025); M.R.U. Crim. P. 11A(a)(4); *State v. Bean*, 2018 ME 58, ¶ 20, 184 A.3d 373.

## I. BACKGROUND

**A.    Facts**

[¶2]  We draw the following facts from the evidence admitted at trial as well as the State's recitation of the evidence at the time of Butterfield's guilty plea.[1]  *See State v. Weyland*, 2020 ME 129, ¶ 2, 240 A.3d 841; M.R.U. Crim. P. 11(b)(3), ©.

[¶3]   Shortly after midnight on April 26, 2022, Jonathan Geisinger, Thomas McDonald, and Damion Butterfield dropped off Anthony Osborne at Burger King in Portland.  Osborne was there to meet the two victims in this case—a man and a woman—who had contacted Osborne earlier in the night looking to obtain drugs.  As it turned out, Osborne did not have drugs and instead hoped to obtain drugs from the victims.

[¶4]  A short time later, Osborne sent a text message directing Geisinger, McDonald, and Butterfield to an address in Portland.  Upon arriving at that address, Geisinger, McDonald, and Butterfield encountered Osborne and the

---

[1]  Because Butterfield entered his guilty plea after the jury had reached a verdict, but before the verdict was read, the court considered the trial evidence in finding a factual basis for the plea.

two victims.  A scuffle ensued involving Geisinger, McDonald, Butterfield, and the male victim.

[¶5]  The female victim then saw a tall male, later identified as Butterfield, pull out a gun and shoot the male victim twice while the other two men involved in the scuffle ran away.  Butterfield then approached the female victim, ordered her to get down on her knees, and shot at her twice before he, too, ran away.

[¶6]  The male victim died from gunshot wounds to his abdomen.  The female victim, who sustained an injury to her arm and had bullet holes in her hat and coat, survived.

## B.    Procedure

[¶7]  Butterfield was charged with murder and attempted murder by criminal complaint on June 8, 2022, and arrested the same day.  One month later, the grand jury returned an indictment charging Butterfield with intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2025) (Count 1); aggravated attempted murder with a firearm (Class A), 17-A M.R.S. § 152-A(1)(A)-(B) (2025) (Count 2); possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1)(1) (2022)[2] (Count 3); and robbery

---

[2] Title 15 M.R.S. § 393(1)(A-1)(1) has since been amended to make the crime a Class B crime.  *See* P.L. 2023, ch. 491, § 1 (effective Aug. 9, 2024).

4

(Class A), 17-A M.R.S. § 651(1)© (2025) (Count 4). Butterfield entered a plea of not guilty at his arraignment.

[¶8] The court held a jury trial starting on December 6, 2023. On the evening of December 14 (the night before closing arguments), the court informed the parties via email that it intended to grant the State's request to instruct the jury on accomplice liability. The next day, the court gave the instruction over Butterfield's objections that it was not generated by the evidence and represented an unfair late-in-the-game shift from the State's theory that Butterfield was the shooter.

[¶9] On December 19, 2023, while the jury was deliberating, Butterfield elected to plead guilty as charged in return for a jointly recommended sentence of thirty-five years' imprisonment. He decided to accept the State's offer after several notes from the jury convinced him that the jury was likely to find him guilty as an accomplice to murder. Defense counsel strongly opposed the change of plea. Butterfield, however, proceeded with the unconditional plea[3] even after being informed that the jury had reached a verdict. The court conducted two change-of-plea colloquies on the record, one in chambers and

---

[3] "An unconditional guilty plea is tendered when, as here, a defendant does not reserve the right to seek appellate review of a specified ruling of the court." *State v. Adams*, 2018 ME 60, ¶ 1 n.1, 184 A.3d 875.

one in open court, before ultimately accepting Butterfield's guilty plea.[4]  The jury was dismissed without announcing its verdict.

[¶10]  Two weeks later, Butterfield timely moved to withdraw his plea and for a new trial.  *See* M.R.U. Crim. P. 32(d), 33.  The court denied both motions after hearing.  At a sentencing proceeding held on June 13, 2024, the court imposed the agreed-upon sentence of thirty-five years' imprisonment.[5]

[¶11]  Butterfield filed a timely notice of appeal and application to allow an appeal of sentence.  *See* 15 M.R.S. §§ 2151-2157 (2025); M.R. App. P. 2B(b)(1), 20.  The Sentence Review Panel granted the application, and the sentence appeal proceeded as part of the appeal from the conviction.  *State v. Butterfield*, No. SRP-24-283 (Me. Sent. Rev. Panel Jul. 31, 2024); *see* M.R. App. P. 20(g), (h).

---

[4] During the colloquy in chambers, Butterfield declined to move forward with the guilty plea after the State clarified that the agreed-upon thirty-five years would be consecutive to a sentence Butterfield was already serving for a probation violation.  Counsel continued to negotiate the terms of the plea, however, and the parties ultimately agreed that Butterfield would serve no more than thirty-five years from the day he was sentenced (including whatever remaining time he had pending in other cases).  With that agreement reached, Butterfield again decided to enter a guilty plea, which the court accepted after conducting a formal colloquy in open court pursuant to M.R.U. Crim. P. 11.

[5] Specifically, the court sentenced Butterfield as follows: thirty-five years' imprisonment for murder (Count 1); thirty-five years' imprisonment for attempted murder (Count 2) to be served concurrently with Count 1; five years' imprisonment for illegal possession of a firearm (Count 3) to be served concurrently with Counts 1 and 2; and fifteen years' imprisonment for robbery (Count 4) to be served concurrently with Counts 1-3.

## II. DISCUSSION

[¶12]   Butterfield contends broadly that "the trial and unusual plea process" were not fundamentally fair and resulted in a due process violation. As he acknowledged at oral argument, however, our appellate review of a conviction entered upon an unconditional guilty plea is limited to an examination of the denial of any subsequent motion to withdraw the plea.[6] *See Weyland*, 2020 ME 129, ¶¶ 16-32, 240 A.3d 841 (reviewing denial of motion to withdraw guilty plea); *State v. Adams*, 2018 ME 60, ¶¶ 11, 13, 184 A.3d 875 (dismissing direct appeal of unconditional guilty plea in light of our "long-standing jurisprudence strictly limiting direct appeal following a guilty plea"); *State v. Plummer*, 2008 ME 22, ¶ 2, 939 A.2d 687 (dismissing appeal from guilty plea "[i]n the absence of either a conditional guilty plea . . . , or a motion to withdraw the guilty plea before sentencing").   We accordingly proceed to review the denial of Butterfield's motion to withdraw his plea as well as the

---

[6]   There are narrow exceptions to this general rule, none of which is applicable here. *See Adams*, 2018 ME 60, ¶ 14, 184 A.3d 875 (identifying the "rare grounds for [direct] appeal" following a guilty plea as "a lack of jurisdiction in the trial court or a sentence imposing unconstitutional punishment").

associated motion for a new trial.  Finally, we address Butterfield's appeal from his sentence.

### A.    Motion to Withdraw Plea

[¶13]  "We review the trial court's denial of a motion to withdraw a plea for an abuse of discretion."  *Weyland*, 2020 ME 129, ¶ 16, 240 A.3d 841.  Factual determinations are reviewed for clear error.  *Id.* ¶ 19.  We have explained that "'[a]lthough relief should be granted liberally, a defendant does not have an absolute right to withdraw a plea.'  Instead, the trial court's decision must be 'based upon the facts and circumstances of each particular case with the ultimate purpose of furthering justice.'"  *Id.* ¶ 17 (citations omitted) (first quoting *State v. Hillman*, 2000 ME 71, ¶ 7, 749 A.2d 758; and then quoting *State v. Malo*, 577 A.2d 332, 333 (Me. 1990)).  The relevant factors, which the court thoroughly analyzed, are "(1) the length of time between the defendant's entering the plea and seeking to withdraw it; (2) any prejudice to the State that would result if the plea were withdrawn; (3) the defendant's assertion of innocence; and (4) any deficiency in the Rule 11 proceeding."  *Id.*  ¶ 18.  On appeal, Butterfield focuses primarily on the fourth factor, arguing that the trial court's decision to "7xclude7i[e]" him with "an eleventh[-]hour accomplice liability instruction" led to a "poisoned" process that ultimately rendered his

8

plea involuntary. We reject his contentions and, upon review of all four factors, affirm the court's exercise of its discretion to deny Butterfield's motion to withdraw his plea.

[¶14] We turn first to the timing of the motion. Butterfield waited only fourteen days before seeking to withdraw his plea. *See id.* ¶ 19 n.3 (noting that "[w]e have held that nineteen days weighed in favor of granting a motion and that three months weighed against granting a motion" (citations omitted)). The court determined that the prompt filing of the motion was the sole factor that lay in Butterfield's favor but that it did not "outweigh the remaining factors and other circumstances." We agree with the trial court that although Butterfield filed his motion quickly, his rapid change of heart is not dispositive. Instead, we must examine the remaining factors. *Cf. id.* ¶ 21 (analyzing all four factors even when motion was filed only twenty-two days after the plea); *Hillman*, 2000 ME 71, ¶ 9, 749 A.2d 758.

[¶15] We next consider whether allowing Butterfield to withdraw his plea and proceed to trial—in this case, for a second time—would prejudice the State by "seriously 8xclude8il[ing] the State's case." *Weyland*, 2020 ME 129, ¶ 22, 240 A.3d 841 (alteration and quotation marks omitted). Here, the court found that although the State did not articulate any such prejudice, the

deceased victim's family and the surviving victim would endure trauma during a second trial. The court was rightfully sensitive to this concern. Nonetheless, we emphasize that we will consider "the retraumatization of victims" in this context only if it "affect[s] the State's ability to present its case," *id.* ¶ 23, a finding absent from this record. Even so, as discussed below, we conclude that the court appropriately determined that the balance of factors weighed against granting Butterfield's motion. *See id*; *Hillman*, 2000 ME 71, ¶ 10, 749 A.2d 758.

[¶16] The third factor is whether the defendant has asserted his innocence. *Weyland*, 2020 ME 129, ¶ 24, 240 A.3d 841. A credible claim of innocence may tip the scale in favor of permitting a defendant to withdraw his plea. *See id.* (explaining that "trial courts must assess the credibility of an innocence claim in ruling on a motion to withdraw a plea" (quotation marks omitted)); *cf. State v. Newbert*, 2007 ME 110, ¶ 17, 928 A.2d 769 (affirming the denial of a motion to withdraw plea where the defendant's "assertion of innocence came without explanation"). Butterfield, however, made no such claim. Instead, the record supports the court's findings that Butterfield "ha[d] not asserted innocence," that "[d]efense counsel conceded at hearing that he would not do so," and that "the State submitted posttrial text messages from Mr. Butterfield to his romantic partner in which he appears to admit to

committing the crimes charged." The court did not abuse its discretion in determining that this third factor weighs against Butterfield. *See Hillman*, 2000 ME 71, ¶ 12, 749 A.2d 758 (observing that "the complete absence of a protestation of innocence in support of a motion to withdraw weighs against a defendant").

[¶17] Finally, we consider the crux of Butterfield's claim: whether there was any deficiency in the Rule 11 proceeding. *Weyland*, 2020 ME 129, ¶ 29, 240 A.3d 841. "Rule 11 hearings establish a procedure to ensure that constitutional and procedural prerequisites are met before a guilty plea is accepted. A plea is valid if it is made voluntarily with knowledge of the elements of the crime, the penalty that might be imposed and the constitutional rights relinquished by foregoing trial." *State v. Lambert*, 2001 ME 113, ¶ 12, 775 A.2d 1140 (citations and quotation marks omitted). "We have never required strict compliance with Rule 11 in order to uphold a guilty plea. Rather, a guilty plea is vitiated only if the *total record* fails to establish adequately a factual matrix by which the plea is affirmatively shown to have been 10xclude10ilyy and understandingly made." *Weyland*, 2020 ME 129, ¶ 29, 240 A.3d 841 (alterations, citations, and quotation marks omitted).

[¶18]  Butterfield first argues that his guilty plea, entered after the jury notified the court that it had reached a verdict but before that verdict could be announced, was "rushed."  The record shows otherwise.  The court supportably found that Butterfield had "multiple opportunities over the course of several hours to discuss his options with counsel," "an additional opportunity to . . . discuss with counsel after the jury reported that it had reached a verdict," and time to negotiate "at length" the details of the offer.  Butterfield affirmed during the Rule 11 colloquy that he had adequate time to consult with counsel and, indeed, that he was "positive" he did not need more time.  In short, nothing in the record suggests that Butterfield's will was overborne by time pressures. *See United States v. Marrero-Rivera*, 124 F.3d 342, 350 (1st Cir. 1997) (holding that time pressure did not render guilty plea entered within an hour of deadline involuntary; facing such pressure "is common among criminal defendants, and hardly exceptional enough to evince an overbearing of [a defendant's] will").

[¶19]  Nor is there any record support for Butterfield's contention that his history of mental illness precluded a knowing and voluntary plea.  To the contrary, as the court found, Butterfield was "undoubtedly informed," his judgment was "unimpaired," he was "assured in his decision," and he was "congenial and calm throughout the proceeding."  Because competent evidence

supports these findings, we will not disturb them on appeal. *See Weyland*, 2020 ME 129, ¶ 30, 240 A.3d 841 (rejecting defendant's claims of "limited cognitive capacity" where competent record evidence, including the trial court's "observations of [the defendant] at the Rule 11 hearing," supported the court's finding that plea was knowing and voluntary); *State v. Boone*, 444 A.2d 438, 443 (Me. 1982) ("[T]he trial justice could reasonably infer from the rational and coherent pattern of answers [at the Rule 11 hearing] that the defendant was well-informed, knew exactly what he was doing and understood the consequences of his tactical decision [to plead guilty].").

[¶20] We also reject Butterfield's assertion that supposed trial errors effectively forced him to plead guilty. Although Butterfield urges us to review the events of the trial, and specifically the court's decision to instruct the jury on accomplice liability, we decline to do so given the procedural posture of the case.[7] Even if we were to assume that the court erred or that the trial was fundamentally unfair, that would not inevitably lead to a conclusion that Butterfield's plea was involuntary. Instead, the question we must answer is whether "the plea is the product of the defendant's free choice and not the

---

[7] As the court appropriately advised Butterfield, a defendant who enters a guilty plea limits his options for appeal. *See State v. Plummer*, 2008 ME 22, ¶ 2, 939 A.2d 687; *State v. Huntley*, 676 A.2d 501, 503 (Me. 1996).

result of force, threats, or promises other than those in connection with a plea agreement." M.R.U. Crim. P. 11(d). While we do not doubt that Butterfield felt immense pressure as he weighed his options in the face of a looming jury verdict, such pressure does not require a finding of involuntariness. *See Morgan v. State*, 287 A.2d 592, 607-09 (Me. 1972) (concluding there was ample evidence of the "voluntariness and intelligence of petitioner's plea" entered while petitioner was "in process of being tried before a jury on a charge of murder" and quoting *Brady v. United States*, 397 U.S. 742, 751 (1970) for the proposition that "a guilty plea does not become 'compelled'—i.e., deprived of its voluntary character[—]merely because . . . the plea was 'motivated by the defendant's desire to accept the probability of a lesser penalty'"(alterations omitted)).

[¶21] Here, the court conducted not one but two thorough colloquies with Butterfield about whether he understood his decision and its consequences. Butterfield knew the elements of the crimes to which he was pleading guilty as well as the elements of accomplice liability. He knew the penalty that would be imposed. Finally, he was informed of the constitutional rights that he relinquished by entering his guilty plea. *See* M.R.U. Crim. P. 11©; *Malo*, 577 A.2d at 333 ("A valid plea is made with knowledge of the elements of

the crime, the penalty that might be imposed and the constitutional rights relinquished by foregoing trial.").

[¶22] We agree with the court that its

> inquiries went above and beyond the required inquiries of a Rule 11 proceeding. The Court repeatedly reminded Mr. Butterfield that he did not have to plead guilty that day and the jury had reached a verdict which he was entitled to hear if he so chose . . . . When asked a final time whether he was certain he wanted to enter a guilty plea, Mr. Butterfield responded, "I'm absolutely positive."

[¶23] The record is simply devoid of evidence that Butterfield's guilty plea was "the result of force, threats, or promises" that would render it involuntary. M.R.U. Crim. P. 11(d); *cf. Malo*, 577 A.2d at 334 (declining to accept argument that plea allegedly "made under emotional duress" was involuntary where trial court conducted questioning "to determine that the plea was the product of the defendant's free choice" (alterations and quotation marks omitted)).

[¶24] We therefore conclude that the court did not abuse its discretion in denying Butterfield's motion to withdraw his guilty plea.

## B.   Motion for New Trial

[¶25]   Having determined that the court did not err in denying Butterfield's motion to withdraw his plea, we quickly dispatch with

Butterfield's claim that the court should have awarded him a new trial. Butterfield waived his right to a trial by jury through his guilty plea. M.R.U. Crim. P. 11©(2); *Cote v. State*, 286 A.2d 868, 873 (Me. 1972). In the absence of a successful motion to withdraw the plea, there was no new trial to be had. *See State v. Cardosi*, 498 A.2d 599, 600-01 (Me. 1985) ("[A] necessary predicate for any trial—the cancellation of the outstanding guilty plea—is here missing.").

## C.     Sentence Appeal

[¶26] Finally, we dismiss Butterfield's appeal of his sentence.[8] By statute, review of the propriety of a sentence is unavailable for sentences entered pursuant to a joint recommendation of the parties. 15 M.R.S. § 2151(2); *see also Bean*, 2018 ME 58, ¶ 20, 184 A.3d 373 ("[S]entences imposed as a result of the court accepting a plea with an agreed-upon sentence" are "15xclude[ed] from our discretionary review."). Here, the court accepted the agreed-upon sentence of thirty-five years' imprisonment. We therefore do not have authority to review Butterfield's sentence and thus dismiss that portion of his appeal.

The entry is:

Judgment affirmed. Sentence appeal dismissed.

---

[8] On appeal, Butterfield identifies no specific impropriety in the sentence. However, we need not address whether Butterfield waived discretionary sentence review, *see State v. Peters*, 2024 ME 33, ¶ 27 n.5, 314 A.3d 290 (explaining that undeveloped arguments are waived), in light of our conclusion that his sentence appeal must be dismissed.

James P. Howaniec, Esq. (orally), Lewiston, for appellant Damion L. Butterfield

Aaron M. Frey, Esq., Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2022-2188
FOR CLERK REFERENCE ONLY