MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2025 ME 71
Docket:       Som-24-390
Argued:       June 4, 2025
Decided:      August 7, 2025

Panel:        STANFILL, C.J., and HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

NEIL T. MACLEAN

LAWRENCE, J.

[¶1]  Neil T. MacLean appeals from a judgment of conviction of one count of attempted murder and two counts of arson entered by the trial court (Somerset County, *Benson, J.*) following a jury trial.  On appeal, MacLean argues that the court committed obvious error by failing to sua sponte instruct the jury on the defense of abnormal condition of the mind.  MacLean also argues that the court abused its discretion when it admitted testimony from his wife without a proper foundation and when it did not grant MacLean's motion for a mistrial or issue a curative instruction after the State called MacLean's wife a hostile witness in the presence of the jury.  In addition, MacLean and the State agree that the court erred by not merging his three convictions for the purposes of sentencing.  We conclude that the court did not err by failing to instruct the

jury sua sponte on the defense of abnormal condition of the mind, and it did not abuse its discretion by denying MacLean's motion for a mistrial, or by refusing to issue a curative instruction following the hostile-witness comment. We also conclude that any error in admitting the relevant testimony from MacLean's wife was harmless. We therefore affirm the judgment of conviction but, on the agreement of the parties that all counts should have been merged for sentencing, we vacate the sentence and remand the matter for resentencing.

## I. BACKGROUND

[¶2] The following facts are pulled from the procedural record and from the evidence viewed in the light most favorable to the jury's verdict. *See State v. Bernier*, 2025 ME 14, ¶ 2, 331 A.3d 398; *Gordon v. State*, 2024 ME 7, ¶ 2, 308 A.3d 228.

[¶3] MacLean and his wife live in an apartment building along with several other residents. In the early morning hours of October 30, 2022, MacLean lit a match in his bedroom and set his bed on fire. MacLean had been drinking that evening and he knew that his wife was sleeping in a nearby room when he lit the match.

[¶4] MacLean's wife woke up to the smell of smoke and called 9-1-1. Two police officers arrived and persuaded MacLean's wife to leave the burning

apartment. The officers found MacLean slumped over in the living room with little clothing on, and MacLean refused to leave the apartment. Eventually, after MacLean still would not leave, the officers dragged him outside to safety. First responders then checked the apartment building and determined that the other tenants had all evacuated the building. No one died in the fire, and the only injuries sustained were by the first two responding officers, who were treated for smoke inhalation.

[¶5] A few hours after the fire, the investigator from the Office of the State Fire Marshal (OSFM) spoke with MacLean. During this interview, MacLean's demeanor was direct and "seemed okay"; MacLean admitted that he started the fire by lighting his bed on fire; and MacLean explicitly stated that he was trying to kill himself, his wife, and the rest of the people in the apartment building.[1]

---

[1] Regarding the interview, the OSFM investigator testified:

And then I was like, how do you feel about it?

He is like, good.

And I said, what about – were you trying to kill yourself?

Yes.

How about your wife?

Yes.

4

[¶6]  MacLean was charged the next day by criminal complaint with two counts of arson (Class A), 17-A M.R.S. § 802(1)(A), (B)(2) (2025).  Two days later, the trial court ordered that MacLean undergo a mental examination to determine whether he was competent to stand trial.[2]  The competency report was filed in January 2023.  In February 2023, a grand jury indicted MacLean on the two counts of arson cited above and one count of attempted murder (Class A), 17-A M.R.S. §§ 152(1)(A), 201 (2025).

[¶7]  The court (*Davis, C.J.*) held an arraignment in March 2023, and MacLean entered a plea of not guilty.  In June 2023, the court (*Mead, J.*) conducted a judicial settlement conference, which was not successful.  In July 2023, MacLean filed a motion for a mental examination.  The court (*Mullen, C.J.*) ordered that MacLean be examined as to competency, insanity, abnormal condition of the mind, and any other condition deemed necessary by the examiner.  The results of the exam were filed with the court in August and September 2023.

---

What about the rest of the people in the apartment?

Yes.

This dialogue is corroborated by the recording of the interview that was admitted in evidence.

[2]  Approximately four days after the fire, MacLean was taken to Dorothea Dix Psychiatric Center in Bangor for two months of treatment.

[¶8]  The court (*Benson, J.*) held a jury trial on June 17, 2024.  At trial, the jury heard testimony from MacLean, MacLean's wife, the first two police officers on the scene, a responding firefighter, and the OSFM investigator.  The court admitted in evidence body camera footage from the responding officers, numerous photos of MacLean's apartment and neighboring apartments following the fire, and the interview with MacLean conducted by the OSFM investigator a few hours after the fire.  The jury found MacLean guilty on all three counts—attempted murder and both arson charges.

[¶9]  The court held a sentencing hearing on July 26, 2024.  After performing a *Hewey* analysis, *see State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993), the court sentenced MacLean to twenty-five years of incarceration, with all but fifteen years suspended, on the attempted murder charge;[3] fifteen years of incarceration on each arson charge, to run concurrently with the attempted murder sentence; and four years of probation.  MacLean timely appealed.  *See* M.R. App. P. 2B(b)(1).

---

[3]  The indictment did not specify a subsection of the murder statute, but the judgment and commitment form specifies that MacLean was convicted for attempted murder under 17-A M.R.S. § 201(1)(A) (2025).

## II. DISCUSSION

[¶10] We address seriatim the three issues raised by MacLean on appeal: (1) whether the court committed obvious error by failing to sua sponte instruct the jury on the defense of abnormal condition of the mind; (2) whether the court abused its discretion by admitting testimony from MacLean's wife without the State's laying a proper foundation; and (3) whether the court abused its discretion by failing to grant a mistrial or issue a curative instruction after the State, in the presence of the jury, characterized MacLean's wife as a "hostile witness."

### A. The court's failure to instruct the jury on the defense of abnormal condition of the mind did not constitute obvious error.

[¶11] MacLean argues that the court committed obvious error by failing to sua sponte instruct the jury on the defense of abnormal condition of the mind. Because we determine that the instruction was not generated by the evidence, we conclude that the court did not err in failing to provide the instruction.

[¶12] Because MacLean did not raise this issue before the trial court, we review the failure to give the instruction for obvious error. *See State v. Robbins*, 2019 ME 138, ¶ 8, 215 A.3d 788. Obvious error is an error that is plain, affects

substantial rights, and "seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.*

[¶13] Under 17-A M.R.S. § 101(1) (2025), "[t]he State is not required to negate any facts expressly designated as a 'defense,' or any exception, exclusion or authorization . . . unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial that is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt." A trial court must instruct the jury on a statutory defense that is generated by the evidence, even when the defense is not asserted by the defendant, unless the defendant expressly waives the defense. *See State v. Berube*, 669 A.2d 170, 172 & n.2 (Me. 1995); *State v. Ford*, 2013 ME 96, ¶¶ 12, 15, 82 A.3d 75; 17-A M.R.S. § 101(1). If the defense is not expressly waived, "obvious error results when the court fails to instruct the jury" on the defense. *Berube*, 669 A.2d at 172.

[¶14] Title 17-A M.R.S. § 38 (2025) sets forth the statutory defense of abnormal condition of the mind as follows: "Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind." *See State v. Hallowell*, 2022 ME 55, ¶ 16, 285 A.3d 276. Maine's criminal code does not define "abnormal condition of the mind." *State*

*v. Griffin*, 2017 ME 79, ¶ 13, 159 A.3d 1240 (explaining that "abnormal condition of the mind" is interpreted through "common usage and understanding" (quotation marks omitted)). "For purposes of the mental abnormality defense, the abnormality need not possess a specific character." *State v. Graham*, 2015 ME 35, ¶ 20, 113 A.3d 1102.

[¶15] "When evidence of an abnormal condition of the mind is presented, the [factfinder] is called upon to determine whether the State has proved beyond a reasonable doubt that the accused acted with the culpable state of mind necessary to commit the crime charged." *Hallowell*, 2022 ME 55, ¶ 16, 285 A.3d 276 (quotation marks omitted). In other words, evidence of the defendant's abnormal state of mind can serve to negate the mens rea element of an offense. *Griffin*, 2017 ME 79, ¶ 12, 159 A.3d 1240. Thus, unlike the affirmative defense of insanity,[4] "[w]hen mental abnormality is put in issue, the burden remains on the prosecution to prove the culpable state of mind beyond

---

[4] We have held that an instruction on an abnormal condition of the mind is "particularly important" when an insanity defense instruction is given because, "[w]ithout it, the instructions on the affirmative defense of insanity may mislead the jury as to the prosecution's burden of proof on 'culpable state of mind' when the evidence tending to negate 'culpable state of mind' is the same evidence which goes to establish the 'insanity defense.'" *State v. Abbott*, 622 A.2d 723, 725 (Me. 1993) (quotation marks omitted). There was not an insanity defense instruction in this case, nor does MacLean allege that one should have been given.

a reasonable doubt." *Graham*, 2015 ME 35, ¶¶ 17-19, 113 A.3d 1102 (quotation marks omitted).

[¶16]  Here, although MacLean did not waive the defense, the evidence presented at trial was not sufficient to require the trial court to sua sponte issue a jury instruction on mental abnormality.  The State had to prove beyond a reasonable doubt that MacLean had the culpable state of mind required for attempted murder,[5] i.e., that MacLean either intentionally or knowingly intended to cause the death of another human being.  17-A M.R.S. §§ 152(1)(A), 201(1)(A).  Under Maine law, this means that the State had to prove that MacLean either consciously wanted to cause the death of another or was aware that the death of another was practically certain to occur as a result of his setting the fire.  *See* 17-A M.R.S. § 35(1)(A), (2)(A) (2025).

[¶17]  MacLean argues that a mental-abnormality instruction was generated by the evidence because his "impaired and abnormal mental state was a centerpiece of the trial."  MacLean did not present any expert testimony or psychiatric evaluations as evidence.  Instead, MacLean and several lay witnesses testified as to MacLean's mental state at the time of the offense.  This

---

[5]  MacLean does not challenge that he had the requisite mens rea for the two arson offenses of which he was convicted.

testimony included statements that MacLean had "something going on in his brain" the night of the fire and observations from responding officers about how MacLean was not responsive or coherent when the officers arrived at the scene. MacLean himself testified that he was sleeping very little at the time of the fire, was severely depressed, and was thinking only of harming himself when he started the fire.

[¶18] The testimony was insufficient to generate a jury instruction on the defense of abnormal condition of the mind. MacLean and other lay witnesses vaguely alluded to MacLean experiencing mental illness, but they did not suggest that MacLean's cognitional or volitional abilities were impaired at the time of the offense to a degree sufficient to negate the mens rea required for attempted murder. *See State v. Barrett*, 577 A.2d 1167, 1170 (Me. 1990) ("[T]he testimony of laypersons cannot be deemed evidence legally sufficient to raise a reasonable doubt that on the particular occasion at issue defendant had acted 'intentionally or knowingly' without evidence tending to show some impairment of defendant's cognitional or volitional faculties." (quotation marks omitted)). Even if the testimony demonstrated the severity of MacLean's depression and suicidal ideation, it was not sufficient to raise a reasonable doubt that MacLean intentionally engaged in conduct which in fact constituted

a substantial step toward intentionally or knowingly causing the death of another human being when he lit a fire inside an apartment building where his wife and several other families were sleeping.[6] *See* 17-A M.R.S. §§ 152(1)(A), 201(1)(A). Accordingly, the court did not commit obvious error by failing to sua sponte instruct the jury on the defense of abnormal condition of the mind.

**B.** **Any error in admitting testimony from MacLean's wife without ensuring a proper foundation was harmless.**

[¶19] MacLean argues that the court abused its discretion in admitting testimony from MacLean's wife after the State refreshed her recollection because there was no foundation that MacLean's wife did not remember making the prior statements that she testified about. We conclude that any error in admitting this testimony was harmless.

[¶20] "We review a trial court's rulings on the admissibility of evidence for an abuse of discretion." *State v. Hussein*, 2019 ME 74, ¶ 10, 208 A.3d 752. "Abuses of discretion occur when, in making [an evidentiary ruling], the judge makes an error in the application of the law to the facts." *Id.* ¶ 17.

---

[6] At oral argument, MacLean's counsel acknowledged that having suicidal ideation does not per se constitute an abnormal condition of the mind without additional evidence demonstrating that the defendant may have lacked the requisite mens rea for the crime charged.

[¶21]  A party seeking to refresh a witness's recollection pursuant to M.R. Evid. 612 must first lay a foundation by demonstrating the witness's lack of memory as to certain previous events.  *See Robbins*, 2019 ME 138, ¶ 36, 215 A.3d 788.  Here, MacLean points to two different times where defense counsel objected to the State's seeking to refresh his wife's recollection.  The first time, the State asked her, "Do you remember saying something different to [the OSFM investigator] than what you have stated here today?" and MacLean's wife responded, "No."  The State was then permitted to refresh MacLean's wife's recollection by showing her a copy of the report that recounted what she had previously said to the OSFM investigator.

[¶22]  Even though it may be unclear whether MacLean's wife meant that she did not remember if she said something different or that she was positive that she did not say something different, following this exchange she did not give any testimony that was prejudicial to MacLean.  After being shown the OSFM investigator's report, MacLean's wife repeated that she did not say something different to the OSFM investigator.  After that, the State used the report to impeach her, and the statements she made to the OSFM investigator were properly admitted as prior inconsistent statements.  Moreover, she specifically acknowledged that her prior statement to the OSFM investigator

was true.  As such, any error in the admission of this testimony was harmless.
*See Hussein*, 2019 ME 74, ¶ 19, 208 A.3d 752 ("An error is harmless when it is
highly probable that it did not affect the jury's verdict." (quotation marks
omitted)).

[¶23]  The second time the State refreshed MacLean's wife's recollection
occurred after the following exchange:

> [State]: [D]uring the fire do you recall any other statements that
> Mr. MacLean stated about the fire?
>
> [Wife]:  No.
>
> [State]:  Would a copy of the [OSFM] report potentially refresh your
> memory as to that?
>
> [Wife]:  Sure.

After the court allowed the State to refresh MacLean's wife's recollection with
previous statements she had made to the OSFM investigator, again over defense
counsel's objection, she testified that she remembered MacLean saying during
the fire "[t]hat he didn't care if he killed everyone."

[¶24]  It was reasonable for the trial court to understand from this
ambiguous testimony that MacLean's wife demonstrated a lack of memory as
to her previous statements.  However, even if a proper foundation was not laid,
we conclude that any error in its admission was harmless.

[¶25]  Although MacLean's wife's testimony about MacLean not caring if he killed everyone spoke to MacLean's culpability, there was similar evidence demonstrating that MacLean intended or undoubtedly knew that he would likely kill other people when he set the fire.  Notably, there was an audio recording from the OSFM investigator's interview of MacLean where MacLean stated that he was trying to kill himself, his wife, and everyone else in the apartment building.  In addition, the State elicited testimony from MacLean that he was aware that his wife was asleep in a nearby room at the time he started the fire.  As such, significant credible evidence *provided by MacLean* was adduced to show that when he set the fire he either intended to kill others or knew that it was practically certain that others would be killed, which demonstrates the mens rea required under the statute.  *See* 17-A M.R.S. § 35(1)(A), (2)(A); *id.* §§ 152(1)(A), 201(1)(A).  It is thus highly probable that the court's admission of the wife's testimony did not affect the jury's verdict, making it a harmless error.  *See Hussein*, 2019 ME 74, ¶ 19, 208 A.3d 752.

**C.    The trial court did not abuse its discretion by denying MacLean's motion for a mistrial or by failing to issue a curative instruction after the prosecution, in the presence of the jury, characterized MacLean's wife as a "hostile witness."**

[¶26]  MacLean contends that the court abused its discretion by denying his motion for a mistrial or by failing to issue a curative instruction after the

State referred to MacLean's wife as a "hostile witness" in front of the jury. Because the hostile-witness comment did not amount to prejudicial error, the court did not abuse its discretion.

[¶27]  "[W]e review the denial of a motion for a mistrial for an abuse of discretion." *State v. Logan*, 2014 ME 92, ¶ 14, 97 A.3d 121.  "We will overrule the denial of a mistrial only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith."  *Id.* (quotation marks omitted). "When examining instances of alleged prosecutorial misconduct, we first determine whether the misconduct occurred and, if it did, [we then] view the comments of the prosecutor as a whole, looking at the incidents of misconduct both in isolation and in the aggregate."  *State v. Sousa*, 2019 ME 171, ¶ 11, 222 A.3d 171 (quotation marks omitted).

[¶28]  Here, after the State received permission from the court at sidebar to treat MacLean's wife as a hostile witness, the prosecutor said in front of the jury, "Your Honor, I request permission to treat [MacLean's wife] as a hostile witness as we discussed at sidebar."  The defense immediately objected and moved for a mistrial, which the court denied.

[¶29]  MacLean argues that the hostile-witness statement was prejudicial and warranted the declaration of a mistrial or a curative instruction because

the prosecutor's statement conveyed a personal belief that the witness lacked credibility and suggested that the court agreed with the prosecutor's assessment. *See State v. Hassan*, 2013 ME 98, ¶ 33, 82 A.3d 86 ("A lawyer shall not state a personal opinion as to the credibility of a witness." (alteration and quotation marks omitted)).

[¶30]  In *State v. Waite*, 377 A.2d 96, 100 (Me. 1977), we explicitly stated that declaring a witness to be "hostile" in the presence of the jury "is not the equivalent of the disparaging remarks to the prejudice of the witness' credibility which would constitute reversible error" (alteration and quotation marks omitted). *See State v. McFarland*, 232 A.2d 804, 809 (Me. 1967) (holding that no prejudicial error resulted from the trial court's ruling in the presence of the jury that the prosecutor could "treat [the witness] as a hostile witness and ask him some further questions," as this did not amount to disparagement of the credibility of the witness).  In view of this precedent, the hostile-witness comment does not constitute prosecutorial error and thus did not warrant the declaration of a mistrial or a curative instruction.  Accordingly, the court did not abuse its discretion.[7]

---

[7]  Although we conclude that the court did not abuse its discretion, we emphasize that it is best practice to avoid identifying a witness as "hostile" in the presence of the jury.

**D.    MacLean's convictions should be merged per the agreement of the parties.**

[¶31]    Because MacLean and the State unequivocally agree that MacLean's three convictions should have been merged for the purposes of sentencing, we defer to their agreement, and we do not analyze or discuss this issue further.  Based on the agreement of the parties, we vacate the sentence imposed and remand for resentencing.  *See State v. Kline*, 2013 ME 54, ¶¶ 14-15, 66 A.3d 581; *State v. Armstrong*, 2020 ME 97, ¶ 11, 237 A.3d 185.

The entry is:

> Sentence vacated.  Remanded for merger of all counts and resentencing consistent with this opinion.  Judgment affirmed in all other respects.

---

Kurt C. Peterson, Esq. (orally), McKee Morgan, LLC, P.A., Augusta, for appellant Neil T. MacLean

Michael Madigan, Asst. Dist. Atty. (orally), and Seth Main, Stud. Atty., Kennebec County District Attorney's Office, Augusta, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2022-1256
FOR CLERK REFERENCE ONLY